THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| HENRY SCHEIN ONE, LLC, a Delaware limited liability company, <br><br>     Plaintiff, <br> v. <br><br> NATIONAL ELECTRONIC ATTACHMENT, INC. d/b/a VYNE DENTAL, a Delaware corporation, <br><br>     Defendant. | **COMPLAINT** <br><br> Case No. _____ <br><br> District Judge_____ <br> Magistrate Judge _____ |

Plaintiff Henry Schein One, LLC ("HSOne") brings this case against Vyne National Electronic Attachment, Inc. d/b/a Vyne Dental ("Vyne") for violations of the federal Computer Fraud and Abuse Act (CFAA), Digital Millennium Copyright Act (DMCA), Lanham Act, Electronic and Communications Privacy Act (ECPA), as well as multiple Utah statutes and common law doctrines.

## INTRODUCTION

1.     HSOne seeks this Court's intervention to stop Vyne's persistent and malicious hacking of HSOne's software platform while spreading falsehoods about its own conduct and HSOne's efforts to defend its platform security and integrity.

2.     HSOne is an innovative software and services company accelerating the future of dental care. It offers a suite of digital platforms that comprehensively streamline operational, clinical, and financial processes for dental practitioners across the United States. Dentrix and Dentrix Ascend, two of HSOne's flagship products, are tools designed to manage all steps of a dental practice from patient intake to insurance claims submission. HSOne empowers these practices to focus on delivering extraordinary care.

3.     HSOne invests significant resources in securing its dental customer's business and patient health data stored in its software platforms. HSOne's platforms offer various digital and clinical services to its dental customers, including the ability for dental practices to contract with

approved third party software vendors that are part of HSOne's Application Programming Interface (API) Exchange.  In order to qualify for the API Exchange, third party software vendors are required to undertake a security assessment and enter into an agreement with HSOne that sets forth each vendor's obligations to maintain necessary customer approvals and legal, security and compliance standards.  While HSOne is not required by law to maintain this API Exchange, HSOne has developed the API Exchange over many years to provide innovative solutions to its dental customers.

4.      HSOne's API Exchange works with over 140 securely integrated vendors that its dental customers can leverage.  The API Exchange makes available over 750 data endpoints, which enable third-party services to interact with HSOne's platforms.  The API Exchange enables interoperability and freedom of choice for HSOne's dental customers while providing best-in-class user experience along with industry-leading data security.  HSOne supports over 40 categories of third-party vendors with its API Exchange, spanning areas such as patient engagement, revenue cycle management, analytics and imaging, among others.

5.      Vyne is a point solution focused on dental billing.  It shares many dental customers with HSOne.  To provide billing services to its dental practice customers, Vyne aims to read and write data from software platforms like Dentrix that dental practices use to run their business.  Vyne is not, however, part of HSOne's API Exchange.  Unlike the 140 securely integrated vendors who work with HSOne's API Exchange, Vyne seeks to directly read and write data from HSOne's software platform *en masse* in a way that bypasses HSOne's API.  Vyne does so through a series of non-trivial and technically aggressive hacks that access HSOne's protected software database and software systems located on customers' premises without authorization.

6.      HSOne has recently uncovered details regarding Vyne's hacking of the Dentrix software instances that HSOne installs in its customers' infrastructure.  To stop API circumvention, HSOne recently notified Vyne and others of security upgrades it intended to implement.  Vyne, in response, escalated its hacking to get ahead of and circumvent HSOne's security patches.  Vyne's recent and escalating conduct includes pervasive intrusions and circumventions of HSOne's

2

technical security measures to protect the computers at issue against such attacks.  These hacks include at least the following:

- Misappropriating configuration files which HSOne uses to facilitate customer access to its database;

- Misappropriating encrypted administrator credentials contained within settings files to modify settings inside of HSOne's Dentrix platform without HSOne's authorization;

- Exploiting HSOne's source code to steal private decryption keys needed to decrypt sensitive settings and other information from HSOne's Dentrix platform;

- Injecting malicious code to alter the functionality of print drivers to export data from Dentrix;

- Developing software that falsely mimics Dentrix to interact with its database and services; and

- Intercepting web traffic from HSOne's Dentrix platform and redirecting it to Vyne's servers.

7.    None of Vyne's conduct or access is authorized by HSOne.  Vyne goes to great lengths to cover its tracks and obfuscate its malicious hacks of HSOne's customer-installed software systems.  Despite these efforts, HSOne's investigation has recently revealed many of the details of Vyne's hacks—in particular its circumvention of HSOne's technical measures to protect the systems it installs on its customers' premises.  HSOne implemented telemetry in its systems several months ago that has shown Vyne's rapid-fire iteration of its hacks to circumvent HSOne's software security controls.

8.    Particularly concerning is that Vyne's malicious hacks interfere with HSOne's routine security and application upgrades to its software platforms.  Due to Vyne's unauthorized access to and modification of HSOne's software critical system files, HSOne is unable to issue security patches without impacting functionality and causing its own customers challenges.  This

raises security and privacy concerns, as HSOne is unable to maintain its software in the face of Vyne's hacked together API workarounds.

9.    To this day, HSOne continues to investigate and detect new methods Vyne uses to hack its software. Indeed, HSOne discovered more pernicious attacks, including the (1) injection of data into HSOne's software settings file by exploiting debug functionality to create a debug settings file that then intercepts Internet traffic, redirecting it to Vyne's servers; (2) database-level tampering, which runs every 60 seconds to wipe HSOne's security deny-list, a security measure; and (3) creation of a rogue local HTTP proxy bound to a system port using an imported certificate along with the debug override feature exploit to force traffic to this proxy HTTP. Vyne's actions disable encryptions and authentications, sever patching, and expose protected communications to unauthorized first recipients.

10.    HSOne has repeatedly invited Vyne to join its API Exchange, but Vyne refuses to agree to HSOne's API Terms of Service. Vyne has refused, as it desires unfettered access with no restriction. HSOne, however, already enables its customers to export data and does not lock data in. What Vyne seeks is to automate that process *en masse*, which would threaten data integrity and pose other risks. Moreover, HSOne has worked to integrate with certain clearinghouses and has presented Vyne with an offer to similarly integrate on comparable commercial terms. Vyne, however, is uninterested, having apparently determined that hacking is a more desirable approach.

11.    Apart from HSOne, independent industry observers have raised concerns about Vyne's conduct. On August 23, 2025, for instance, one such observer described Vyne's behavior as a "shadow integration" and warned that Vyne's "bypasses" of HSOne's Dentrix APIs create a "major vulnerability waiting to be exploited."[1]

12.    HSOne has focused in recent months on implementing security patches and upgrades to stop unauthorized access to its systems installed on customer locations. Because Vyne refused to stop its unauthorized access despite multiple direct requests to stop, HSOne had no choice but to go the route of implementing technical measures to protect the integrity of its systems

---

[1] Ex. 1 at 4 (Schein vs Vyne_The Fight Over Backdoor Hacks Into Your Data).

and customer data. Vyne, in response, escalated its conduct. Vyne did this through continued technical means to circumvent HSOne's protections, as well as a scorched earth public campaign meant to discredit HSOne in the market and to its customers. Specifically, Vyne has spread a bevy of false statements about its own conduct and HSOne's platform. Among other things, Vyne recently told HSOne's customers that HSOne "prohibits all alternative integration methods," "undermines . . . Practice autonomy" and "Operational resiliency," and that HSOne seeks to "disable [customers'] ability to send claims through Vyne Dental." All of these statements are false and misleading. Vyne knows this, yet intentionally continues to smear HSOne. It spreads these false statements as part of a campaign to pressure HSOne in the hopes that HSOne will stop attempting to prevent Vyne's malicious hacks of its software platform. Vyne's goal is to interfere with HSOne's customer contracts and relationships and pave the way for Vyne's unfettered unauthorized access to HSOne's software systems.

13.    Because Vyne has no regard for HSOne's system architecture, the attacks lead to disruption of services, customer complaints, and risk of data loss. HSOne finds itself in a difficult position because Vyne's access to its software on its customer's premises has been technically challenging to prevent, and has direct negative impacts on HSOne's customers' day-to-day dental business operations. Given the direct impact on its customers, HSOne has only been able to deploy *ad hoc* technical measures in phases to directly assist customers. Also, due to this severe customer impact, HSOne has directly asked Vyne to stop—multiple times, including through a Cease and Desist Letter sent on August 26, 2025—and has attempted to reach a commercial remediation for months.

14.    In the last few weeks, however, it has become clear that Vyne will stop at nothing to continue its unlawful access to HSOne's software systems. Worse, Vyne is making intentional false statements about the situation and interfering with HSOne's customer relationships both through its words and technical hack deployments.

15.    Unless Vyne is enjoined from its conduct, HSOne will be unable to maintain its software and will be playing a never-ending game of whack-a-mole to stop Vyne's next technical

5

circumvention.  HSOne consequently brings this action to protect its software and its customers' valuable and sensitive data from Vyne's dangerous, reckless, and intentional malicious hacks.

## PARTIES

16.     Plaintiff Henry Schein One, LLC is a Delaware limited liability company headquartered in 1220 South 630 East, Suite 100, American Fork, Utah.

17.     Defendant National Electronic Attachment, Inc. d/b/a Vyne Dental is, upon information and belief, a Delaware corporation, headquartered in 100 Ashford Center North, Suite 300, Dunwoody, Georgia 30338.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331.  This action arises under the Computer Fraud and Abuse Act (18 U.S.C. § 1030, et. Seq.), the Copyright Act of 1976 (17 U.S.C. § 101, et. seq.), the Trademark Act of July 5, 1946, as amended (15 U.S.C. § 1051, et. seq.), the Digital Millennium Copyright Act, and the Electronic and Communications Privacy Act.

19.     Alternatively, this Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).  Diversity exists among the parties and the amount in controversy exceeds $75,000.

20.     This Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367(a) because they arise from the same facts and concern the same subject matter as the federal claims.

21.     Venue is proper in this Court under 28 U.S.C. §1391(b)(1)-(2) because a substantial portion of the wrongdoings alleged occurred in this District and because Vyne conducts significant business in this District.  For instance, on information and belief, Vyne's CEO, Mr. Stephen Roberts, President Mr. James Grover, and Chief Technology Officer Mr. Jimmy Nix, each used to work for HSOne and had access to many sensitive HSOne systems and information.  On information and belief, multiple of Vyne's senior personnel relevant to this case are in Utah.

6

## FACTUAL BACKGROUND

A.   **HSOne Is A Leading Dental Software Innovator**

22.     HSOne's dental software platforms simplify workflows, enhance patient care, and streamline practices for over a hundred thousand dentists.  HSOne's mission is to accelerate the future of dental care through its pioneering Dentrix practice management systems.

23.     Because Dentrix is a hub for HSOne's customers' dental practices, many third-party vendors seek to integrate and interoperate with it.  Though it has no obligation to do so, HSOne enables this interoperation through its API Exchange.

24.     HSOne invests significant resources in making its API reliable and secure for the benefit of its integration partners and customers.  It implements robust access controls, encryption, system monitoring, and a variety of other technical measures to safeguard its customers' sensitive business and patient health data.

25.     At least 140 third-party vendors make use of HSOne's API Exchange to offer solutions to HSOne's customers in over 40 categories.   These categories include patient engagement, revenue cycle management, analytics, and imaging, among others.  The API contains over 750 data endpoints enabling developers to build a plethora of applications that work with Dentrix.

26.     HSOne welcomes any vendor to participate in the program, and vendors join voluntarily.  All participants in the API Exchange must agree to HSOne's Terms of Use, which is standard and common for any enterprise API solution in the industry.  HSOne reviews the security of its vendors, offers best practices, and maintains a commitment to support the reliability of its API and underlying Dentrix software platform.

27.     HSOne's innovation shines in a highly competitive field.  HSOne's commitment to innovation and supporting dentists over decades has gained it the trust of thousands of dental practices.  These practices rely on Dentrix to operate their businesses every single day, enabling them to focus on delivering excellent patient care.

**B.     VYNE IS A BILLING SOLUTION INTENT ON BYPASSING HSONE'S SECURE API**

28.     Vyne is a company that provides a point solution for dental practices to manage their billing.  To facilitate its operations, Vyne seeks to integrate with practice management platforms like Dentrix.  What Vyne seeks most of all is to have unfettered access to insurance claims data in Dentrix.

29.     Dentrix does not provide endpoints for claims, as those are unique data fields whose automated import and export would risk data integrity compromises.  For claims, Dentrix has backend integrations, integrations that it has offered to implement with Vyne.  Vyne, however, has decided to hack HSOne's software systems—apparently for no other reason but to make more money, despite the negative effects on HSOne's systems and customers.  Vyne's haphazard approach creates multiple conflicting sources of truth inside a dental practice's systems, eroding reliability of the data.  HSOne has no duty to automate a workflow that would compromise data integrity, security, and reliability.

30.     Customers wanting to use Vyne still have a path forward, which consists of manually submitting information and working with claims clearinghouses to support back-end integration.  This approach has been adopted by others.

31.     Rather than accept the secure integration model HSOne offers to other clearinghouses—or use the API features Vyne can use—Vyne refused HSOne's API terms and sought to exploit HSOne's software for purposes of direct, read-write access at scale to HSOne-managed software on customer systems.  Vyne has devoted its resources to circumventing HSOne's technical measures that block unauthorized access and to exfiltrate HSOne customer data *en masse*.

32.     Vyne does not stop at exfiltration.  It also hacks HSOne's Dentrix software platform and systems so that it can inject and write data back into HSOne's software platform as well.

33.     All the while, Vyne misleads and spreads false statements to HSOne's customers about its conduct.  Vyne takes great care to obfuscate what it is really doing and purports to act

with authorization, even though Vyne has not disclosed its hacking methods to its customers and HSOne has made clear to Vyne that its conduct is unauthorized and must cease.

34.     HSOne has recently implemented telemetry to track malicious hacking of its software platform and increase Dentrix's security monitoring capabilities.  This, along with HSOne's other diligent investigation methods, has uncovered the following array of deliberate circumvention methods:

(A) Credential misappropriation and binary masquerading:  Vyne misappropriates Dentrix configuration files (e.g., *FairCom C-Tree* settings) containing encrypted administrator credentials.  Vyne also exploits HSOne's source code to retrieve private decryption keys to decrypt those files.  Further, Vyne hijacks application binaries to make its own application appear legitimate to HSOne's Dentrix software platform.

(B) Administrator privilege escalation:  By decrypting files such as the *dtx.config* file, Vyne is able to recover a passphrase and generate an administrator password.  This allows Vyne to escalate its privileges and function as an administrator of the HSOne software platform on the customer premises, even though Vyne is not authorized to be a Dentrix administrator.

(C) Patch tampering:  Vyne interferes and circumvents HSOne's security measures designed to stop hacks like the ones it is conducting.  Vyne does so through runtime patching of security flags in HSOne's DtxHelp.dll file as well as disk-level patching of the same DLL and redistribution.  This interferes with HSOne's security patches and fixes that it would otherwise regularly send to its customers as needed.

(D) Component impersonation:  Vyne rebuilds Dentrix help components with embedded secrets to survive HSOne updates or patches and develops malicious software that mimics Dentrix to interface with its databases and services.

(E) Code injection for mass data export:  Vyne modifies code at the print driver level to export sensitive data from HSOne's software systems in circumvention of the HSOne API.  Vyne also injects malicious code into Dentrix to write data into files and the

database without authorization.  In other words, Vyne both reads and writes data without authorization.

35.    Vyne's methods reveal a persistent multipronged campaign of intentional access without authorization and circumvention of HSOne's technical security measures.

36.    Vyne's pervasive and sophisticated methods reflect its commitment to hack by any means necessary.  It also reflects, on information and belief, the fact that multiple of Vyne's employees, including its Chief Executive Officer, used to work at HSOne.  These former HSOne employees have significant insider knowledge of HSOne's product and technical systems.

## C.    VYNE HAS ESCALATED ITS HACKING IN RECENT WEEKS THROUGH NEW EXPLOITS IN RESPONSE TO HSONE'S ATTEMPTS TO SECURE ITS SYSTEMS

37.    Despite HSOne's direct statements telling Vyne to stop hacking and its technical measures designed to stop Vyne's unlawful conduct, Vyne persists.  Indeed, in recent weeks, Vyne has escalated its conduct and deployed new malicious hacking methods.

38.    Earlier this year, HSOne began receiving an unusual volume of customer complaints concerning Dentrix system instability, failed claim submissions, and unexplained disruptions to eligibility and payment workflows.  These complaints were at first sporadic but grew in frequency and consistency, causing HSOne to begin to investigate.

39.    To better understand the situation, HSOne developed and deployed internal telemetry capabilities to monitor its software systems and endpoints across its customer deployments.  This telemetry allowed HSOne to track configuration anomalies, unauthorized traffic redirection, and patterns of failed authentication across its customer base.

40.    In recent weeks, the telemetry data proved HSOne's suspicions correct.  According to HSOne's monitoring, Vyne has been releasing rapid successions of software updates—at least a dozen distinct versions—aimed at hacking Dentrix.  Many of Vyne's updates appear to have failed, on information and belief, because they did not properly consider HSOne's software parameters.  Vyne continued to spam new updates to circumvent HSOne's security measures.

Customers who installed these updates often experienced system degradation, failed integrations, and increased support needs.

41. Through its telemetry and customer logs, HSOne uncovered, on or around September 10, 2025, that Vyne was intercepting Internet traffic from HSOne's customers that was meant to go to HSOne and redirecting those transmissions to a Vyne endpoint. Vyne did this by exploiting a debugging function in Dentrix and modifying what is called the eTrans file.

42. Vyne's scheme involves first reverse-engineering HSOne's configuration files and decrypting them by misappropriating private decryption keys HSOne provides to its customers. Vyne then injects data into the configuration files, including programmatically intercepting Internet traffic and redirecting it to its vtrans.vynetrellis.com servers. The end result is the rerouting of patient claim data to Vyne controlled servers. A screenshot showing the results of Vyne's latest hack appears below:



43. By impersonating an administrative user using its improperly gained escalated privileges, Vyne overwrites the Dentrix software systems settings to intercept traffic. Vyne's

exploit causes Dentrix to treat Vyne as the authorized recipient of claim submissions and other data transactions. In the cybersecurity realm, this can be described as a man-in-the-middle attack. Man-in-the-middle attacks enable hackers to intercept communications, like Vyne is doing, and redirect them to their own systems.

44.     In a typical, authorized workflow, Dentrix's eTrans system uses a secure configuration file to determine where to send claim data and how to authenticate the transmission. This file contains the eTrans User ID and the gateway URL—both of which are essential for routing data to HSOne's secure servers and for verifying the legitimacy of the transaction. When properly configured, the system ensures that claims, eligibility checks, and payment records are transmitted securely to HSOne, processed, and returned to the dental practice.

45.     Vyne's hijack subverted this workflow. By exploiting a debug function in Dentrix to inject a malicious configuration, Vyne causes the Dentrix software to send data not to HSOne's secure gateway, but to a Vyne-controlled server. In effect, Vyne inserts itself as the first recipient on all outbound data. Vyne's server receives the data, processes it, and then passes it further along. This redirection is not authorized by HSOne. Further, on information and belief, Vyne misleads HSOne's customers about what it is doing and intentionally misconstrues its conduct as authorized and benign. It is not.

46.     Vyne's modifications break the authentication flow for multiple HSOne services that rely on the same DataServices ID with which Vyne interferes, including HSOne's Eligibility Essentials, Quickbill Premium, and Request to Pay services. The result is that HSOne customers experience failed claims, undelivered payment records, and system instability.

47.     Vyne's interference also obstructs HSOne's ability to deploy security patches. HSOne's patching workflow relies on the same authenticated DataServices connections with which Vyne interferes. This means that Vyne's malicious interception and substitution severs HSOne's essential connection to its own platform installed in customer environments.

48.     Even if HSOne were to repair the configuration setting, Vyne's software has functions to restore the malicious proxy-in-the-middle without user interaction, thus reverting

HSOne's updates and perpetuating the unauthorized data interception and computer access. In sum, Vyne has embedded itself so deep into HSOne's software that it can now override security measures, impersonate HSOne systems, and intercept protected communications on HSOne's Dentrix systems installed at customer premises.

49.    Vyne's conduct is creating significant disruption across HSOne's customer base. It is causing HSOne to have to respond to a plethora of customers experiencing interruptions, failures, and system instability, all because of Vyne's hacks.

50.    Vyne's conduct is egregious for a variety of reasons:

(A) First, it undermines the integrity of HSOne's authentication and security architecture.

(B) Second, it exposes sensitive patient and financial data and creates a vulnerability for access by unauthorized third parties.

(C) Third, it allows Vyne to manipulate or delay the flow of information, potentially corrupting records or interfering with time-sensitive transactions.

(D) Fourth, it deprives HSOne of the ability to monitor, audit, or secure the data flow— effectively stripping HSOne of control over its own system.

51.    Vyne's actions are not merely unauthorized; they are corrosive to the trust, security, and operability of HSOne's software. Consequently, Vyne's conduct—including this most recent escalation in the last few weeks—has caused, and will continue to cause, irreparable harm to HSOne.

**D.    VYNE COUPLES ITS HACKING WITH A CAMPAIGN OF INTENTIONAL FALSE STATEMENTS**

52.    In parallel with its technical intrusions, Vyne is making false statements to HSOne's customers about its conduct and HSOne's software systems. Vyne has intentionally not disclosed the nature of its hacking while publicly stating that its interactions with HSOne's software are authorized and benign. Vyne's false statements have caused some HSOne customers to reach out to HSOne based on their false impression and interfered with HSOne's relationships and contracts with those customers. Vyne's messaging campaign includes mass email blasts, public statements

by its CEO, and other communications designed to obscure Vyne's unauthorized misconduct and shift blame to HSOne for working to secure its own software.

53.     For example, on or around August 11, 2025, Vyne issued communications to HSOne customers containing misleading statements about HSOne's practices and security measures.  Vyne claimed that its hack was an "integration method" and disparaged HSOne's Dentrix Developer Program as prohibiting "all alternative integration methods."[2]   These statements are false and misleading.  HSOne's Developer Program does in fact support secure, API-based integration for authorized vendors and HSOne supports direct integrations as well for claims clearinghouses.  Vyne knows this.

54.     In response to HSOne's attempts to secure and patch its systems, Vyne attempted to characterize to customers that HSOne was somehow targeting Vyne.  This is false and Vyne has no basis to state such a falsehood.  Vyne is intentionally omitting that its methods include unauthorized access, unlawful reverse engineering, and configuration tampering—none of which are sanctioned by HSOne or compliant with HSOne's security protocols.

55.     Vyne further claimed that HSOne's security measures "raise concerns about reduced provider choice and increased vendor lock-in."[3]



**Vyne Dental**
**RE: Recent Henry Schein One Communications and Dentrix Compatibility**
Date: August 11, 2025

We want to provide clarity around recent communications you may have received from Henry Schein One (HS One) concerning the compatibility of Vyne Dental's solutions with Dentrix.

**What's Happening**

We have heard from shared customers that HS One is communicating, as early as August 26, 2025, a Dentrix update may disable your ability to send claims through Vyne Dental. HS One intends to block any connection made to Dentrix outside of their Dentrix Developer Program.

Vyne Dental currently enables thousands of practices to send claims via a print-based integration method comparable to e-fax transmission or PDF-creation tools. Since March 2025, Vyne Dental has actively engaged with HS One to join the Dentrix Developer Program. However, the program still does not facilitate claims submission, and it prohibits all alternative integration methods upon entering the program (including our existing print-based solution).

---

[2] Ex. 2 (Vyne communications to customers).
[3] Ex. 2 at 1. (cropped image).

56.     This is false too.  HSOne's API Exchange supports over 140 third-party vendors. Vyne's portrayal of HSOne conduct as exclusionary not only ignores the fact that Vyne has refused to comply with standard integration protocols and has been relying on unauthorized, unsecured workarounds, but it is also false.  Further, HSOne is under no obligation to provide unfettered hacking access to Vyne and allow it to pilfer HSOne's systems while increasing security and privacy risk to HSOne and its customers.

57.     Then on August 21, 2025, Vyne delivered a letter to HSOne purporting to represent over 500 dental practices that, according to Vyne, requested access to Dentrix data.[4]  Vyne demanded access to patient records, billing data, and scheduling information, claiming that "any failure to [grant access] will directly impair the customer's ability to rely on Vyne Dental's services… potentially disrupting patient care."[5]  This statement falsely implies that HSOne is obstructing patient care, when in fact HSOne is enforcing standard security protocols to protect sensitive data.  Vyne did not provide any detail about what it actually told or did not tell HSOne's customers.

58.     Vyne's CEO, Mr. Stephen Roberts, has also made false public statements about HSOne in an interview earlier this year.  He boasted about Vyne's ability to bypass HSOne's controls, without revealing the full extent of Vyne's hacking.[6]

---

[4] Ex. 3 (Aug. 21, 2025 Vyne letter to HSOne, "*Customer Access Request to Customer Data within Dentrix*").
[5] *Id.* at 1.
[6] EP 152 Future of Interoperability of Dental Information with Stephen Roberts, CEO of VYNE, YouTube (Jun 26, 2025), https://www.youtube.com/watch?v=iQbvfDn5M94&t=112s.

59.      In his interview, Vyne's CEO bragged about Vyne's ability to circumvent HSOne's technical security measures.  He stated, among other things, that "the only way to really prevent Vyne from interfacing with... the [Henry] Schein practice management message would be to intentionally stop it from happening."[7]



60.      Vyne's CEO further boasted about its circumvention of HSOne's API through the following statements:

- "Sometimes it's direct connections to the database. Sometimes it's through the user interface. Sometimes it's through application extensions."[8]

- "We have the ability to take a claim through print capture."[9]

- "We take a print stream and we take a printed ADA claim form."[10]

- "We have the ability to take a claim through, you know, secure file transfer to pick up claims from watch folders, to extract claims out of practice management databases."[11]

---

[7] *Id.* (Transcript captured by YouTube) (Timestamp 30:59-31:12).
[8] *Id.* (Timestamp 28:27-28:34).
[9] *Id*. (Timestamp 30:38-30:41).
[10] *Id*. (Timestamp 31:06-31:12).
[11] *Id*. (Timestamp 30:42-30:51).

- "We extract—we're very good at extracting unstructured data, converting it into structured data, securing it, and transmitting it."[12]

61.    Vyne's campaign constitutes false advertising, business libel, and deceptive trade practices under federal and state law.  It is designed to interfere with HSOne's customer relationships, mislead the market, and shield Vyne's unlawful conduct from scrutiny.

62.    As a result of Vyne's false statements, HSOne has received many inquiries and complaints from concerned customers.  Vyne's false statements and omissions cause HSOne reputational harm and has forced HSOne to divert significant resources to clarify misinformation and restore trust.

**E.    VYNE'S CONDUCT HAS ALREADY COST HSONE SIGNIFICANT DAMAGES AND WILL CAUSE IRREPARABLE HARM IF NOT ENJOINED**

63.    HSOne has done everything it possibly can to avoid escalating this dispute to court. HSOne has invited Vyne into its API program.  HSOne has offered to customize its API Terms for Vyne.  HSOne has even offered to work with Vyne to accomplish a direct integration workflow to accommodate Vyne, similar to what HSOne has implemented with other claims clearinghouses.

64.    Importantly, HSOne has repeatedly explained to Vyne that its hacks and circumventions risk system integrity, patient data privacy, and security of HSOne's platform and its customer data.

65.    To avoid escalating this matter, HSOne has for the last several weeks attempted to engage with Vyne in good faith to negotiate a commercial agreement whereby Vyne would have the advantage of an integration with HSOne similar to how HSOne integrates with certain clearinghouses.  Vyne initially represented to HSOne that it wished to engage in good faith, inducing HSOne to provide it with commercial terms.  HSOne did so, even though during the course of the business discussions of the past several weeks, HSOne continued to discover new hacks and new deployments of technical circumventions by Vyne.  And all the while, Vyne continued spreading false statements and smears about HSOne to its customers.  Even so, HSOne

---

[12] *Id.* (Timestamp: 30:59 – 31:12).

took every possible effort to come to a commercial arrangement, despite Vyne essentially holding HSOne hostage through its hacking and public smear campaign.

66.     Because Vyne has not only failed to stop its conduct in the face of these attempts at resolution, but has escalated them, HSOne has no choice but to seek the Court's intervention to stop Vyne's hacking.   In the days preceding this filing, Vyne has continued to roll out new upgrades and implement new and more advanced technical circumventions of HSOne's security controls.  For instance, just in the last week, HSOne has uncovered evidence that Vyne has issued new updates which, on information and belief, contain additional exploits.   HSOne has also uncovered evidence that Vyne is misappropriating HSOne software credentials and placing them into configuration files without authorization.

67.     Vyne's acts undermine the fundamental security architecture of HSOne's software solutions and inflicts significant reputational and business harm to HSOne.  HSOne's customers are frustrated because their systems are not working properly, and are misled by Vyne to direct that frustration at HSOne.  This has and will continue to cause HSOne lost business opportunities and direct costs supporting and responding to customer issues caused by Vyne.

68.     Worse, Vyne is interfering with HSOne's ability to update its own systems and roll out new security controls.  Due to the nature of Vyne's hacks, it can revert some of HSOne's security upgrades and cause them to fail as well.  No amount of money can repair the damage this causes HSOne.

69.     Unless enjoined by this Court, Vyne will continue to deploy unauthorized workarounds with impunity.

## FIRST CAUSE OF ACTION

### Violation of 18 U.S.C. §§ 1030(a)(2)(C), 1030(a)(4), AND 1030(a)(5)(C)

### Computer Fraud and Abuse Act (CFAA), § 1030 et seq.

70.     Plaintiff incorporates by reference all preceding paragraphs.

71.     Vyne violated 18 U.S.C. § 1030(a)(2)(C) by intentionally accessing HSOne's software on protected computers without authorization or exceeding authorized access to obtain

information from the protected computers, having caused damage and loss to HSOne, which includes costs associated with HSOne's investigation, remediation, and interruption of services.

72. Vyne violated 18 U.S.C. § 1030(a)(4) by knowingly and with intent to defraud, accessing HSOne's software on protected computers without authorization, or exceeding authorized access, whereby by such conduct Vyne was able to further its fraud on HSOne and obtain valuable information in excess of $5,000 in any 1-year period.

73. Vyne violated 18 U.S.C. § 1030(a)(5)(C) by intentionally accessing software on protected computers and as result of such conduct caused damage and loss to HSOne, as defined by the CFAA.

74. The computers, servers, endpoints, and software infrastructure that Vyne hacks are "protected computers" as defined in 18 U.S.C. § 1030(e)(2)(B) because they are used in interstate or foreign commerce or communications.

75. Vyne, without authorization or by exceeding any authorization, accessed HSOne's software on protected computers by, among other things, bypassing technical controls and harvesting credentials and secrets embedded in HSOne files and code, with intent to defraud and to obtain information.

76. Vyne's methods have included at least: (*a*) runtime patching of security flags in DtxHelp.dll; (*b*) disk-level patching of DtxHelp.dll and potential redistribution; (*c*) decrypting dtx.config to recover a passphrase and generate an administrator password; (*d*) extracting ODBC connection strings from process memory; (*e*) rebuilding Dentrix help components with embedded secrets to survive HSOne updates (i.e. patches); (*f*) retrieving configuration files (including FairCom C-Tree settings) containing encrypted administrator credentials and retrieving private keys from HSOne source code to decrypt those files; (*g*) inserting code at the driver level (print driver/print stream) to export data; (*h*) developing components that mimic Dentrix to interface with HSOne databases and services; and (*i*) hijacking application workflows to sign into Vyne's services. Vyne's methods thus include credential extraction, manipulation of the source code,

configuration file decryption, printer driver injection, and mimicry of HSOne's database and services.

77.    By accessing HSOne's software systems without authorization or in excess of authorization, Vyne obtained information from a protected computer in violation of § 1030(a)(2)(C), and on information and belief, Vyne acted knowingly and with intent to defraud to obtain valuable information such as administrator credentials, connection secrets, system access, in violation of § 1030(a)(4).

78.    In an interview published on June 26, 2025, on YouTube, Vyne's CEO, Mr. Stephen Roberts, admitted that Vyne deliberately and systematically seeks ways to circumvent HSOne's security measures.  In the same interview, Vyne's CEO admitted that Vyne employes a multitude of ways to circumvent HSOne's security measures.

79.    HSOne suffered "loss" and "damage" as defined in § 1030(e)(11) and § 1030(e)(8), including costs to investigate, contain, and remediate. Costs were also incurred to restore systems, develop and launch patches, and address business interruptions and communications with customers and vendors. HSOne's aggregate loss exceeds $5,000 during a one-year period and supports civil relief under § 1030(g).

80.    Under 18 U.S.C. § 1030(g), HSOne is entitled to compensatory damages, injunctive relief, and equitable relief.

### SECOND CAUSE OF ACTION

### Violation of 17 U.S.C. §§ 1201(a)(1), 1201(a)(2), and 1201b(1)

### Digital Millenium Copyright Act (DMCA Anti-Circumvention)

81.    HSOne incorporates by reference all preceding paragraphs.

82.    HSOne's software employs technological measures to control access to copyrighted works—e.g. software source code and or protected interfaces. Vyne circumvented these technological measures and/or trafficked in circumvention technology, including password-decryption/obfuscation techniques, in violation of 17 U.S.C. § 1201.

83.    HSOne owns the copyright to its software and related components, including Dentrix, DtxHelp.dll, compiled object code, configuration files (including dtx.config and FairCom C-Tree), admin certificates, and associated documentation.

84.    HSOne employs effective technological measures to control access to its protected copyrighted works, including encryption (e.g., FairCom C-Tree settings), passwords or passphrases, code-signing and application workflows, runtime security flags, driver-level protections, and credential and connection string-controls.

85.    HSOne's has put technological measures in place to control access to its copyright material. Vyne circumvented HSOne's technological measures to access HSOne's protected copyrighted work, in violation of Section 1201(a)(1), by:

(A) Decrypting dtx.config to recover a passphrase and generate an administrator password;

(B) Retrieving and decrypting configuration files (including FairCom C-Tree settings) using private keys taken from HSOne's source code;

(C) Rebuilding Dentrix help components with embedded secrets to survive HSOne updates;

(D) Hijacking application workflows and run Vyne's services as if authorized;

(E) Patching security flags in DtxHelp.dll at runtime;

86.    Beyond the already-described circumventions, Vyne further violated the DMCA every time it bypassed encryption or authentication measures put in place by HSOne to protect its copyrighted work. By defeating code-signing and update integrity checks, Vyne circumvented measures to protect HSOne's exclusive rights in its copyright works.

87.    Vyne's acts lack HSOne's authority.

88.    Upon information and belief, Vyne manufactured, provided, and/or trafficked in technologies and services primarily designed for circumvention with knowledge of their use in circumvention.

89.     HSOne has suffered, and continues to suffer irreparable harm and economic damages, including forensics investigation, remediation, and operational disruption, as well as frustration of HSOne's ability to issue proper updates to secure its software and protect its customers.

90.     Under 17 U.S.C. § 1203, HSOne seeks injunctive relief (including impoundment and destruction of circumvention tools and signed components), actual or statutory damages, costs, attorneys' fees, and any further relief the Court deems just.

### THIRD CAUSE OF ACTION

### Utah Code Ann. § 13-5a-103 et seq.

### Utah Unfair Competition Act (UUCA) and Common Law Unfair Competition

91.     HSOne incorporates by reference all preceding paragraphs.

92.     The Utah Unfair Competition Act prohibits any intentional business act or practice that is unlawful, unfair, or fraudulent, that leads to a material diminution in the value of intellectual property, and that constitutes an enumerated category, including malicious cyber activity or a software license violation. Utah Code Ann. § 13-5a-102(4).

93.     HSOne owns valuable intellectual property, including its Dentrix software, related components, configuration files, encryption keys, and code-signing certificates.

94.     Vyne engaged in intentional, unlawful acts by violating multiple federal statutes and hacking HSOne's software.  Vyne's conduct also causes a diminution in the value of HSOne's intellectual property.

95.     Vyne's unlawful, unfair, and fraudulent conduct includes at least the following:

(A) Malicious hacking by accessing HSOne's systems without authorization and transmitting code to alter or disable security controls;

(B) Software license violations including reverse engineering HSOne's code, modifying HSOne's software components (e.g., patched DLLs), and redistributing altered versions to maintain unauthorized integrations;

(C) Other unlawful acts such as decrypting configuration files, hijacking application workflows, and rebuilding components to bypass update integrity checks.

96.    Vyne acted knowingly and systematically, as confirmed by its CEO's public statements, to circumvent HSOne's security and exploit its intellectual property for competitive advantage.

97.    Upon information and belief, Vyne further willfully communicated, delivered, or caused the transmission of a program, information code, or command without HSOne's authorization or exceeding authorized access

98.    Vyne acted intentionally to defraud HSOne, in circumvention of HSOne's technological measures and software licenses.

99.    HSOne suffers material diminution in the value of its intellectual property, along with economic harm, including forensic investigation, remediation, and business disruption based on Vyne's conduct.  Vyne's conduct also erodes HSOne's customer trust and goodwill.

100.    HSOne is entitled to: (a) actual damages; (b) costs and reasonable attorney's fees; and (c) punitive damages if the court determines it appropriate.

101.    HSOne seeks judgment against Vyne for damages, punitive damages, injunctive relief barring further unfair competition, and all other relief the Court deems just.

## FOURTH CAUSE OF ACTION

**Tortious Interference with Contract and Prospective Economic Relations**

**(Utah Common Law)**

102.    HSOne incorporates by reference all preceding paragraphs.

103.    HSOne has valid and enforceable contracts with its customers and maintains ongoing negotiations and prospective relationships with others for the use of its software ecosystem, which includes the Dentrix platform and related services.

104.    Vyne knew of these existing contracts and prospective economic relationships.  In its own communications, Vyne asserted that HSOne's planned security measures (i.e. patch) would affect "20% of [HSOne's] customers."  Vyne also sent HSOne a document titled "Customer Data

Access Request," purporting to act an agent for over 500 HSOne customers. Upon information and belief, Vyne tortiously interfered with these specific contracts by making material false statements and omissions about its conduct and HSOne to HSOne's customers.

105. Vyne intentionally interfered with HSOne's contracts by improper means, including: circumventing HSOne's security controls to gain unauthorized access to its software systems and data; decrypting configuration files and extracting credentials to impersonate HSOne components; hijacking application workflows to make Vyne's services appear authorized; injecting altered credential and endpoints into Dentrix eClaims/eTrans to disable HSOne authentication capabilities and cripple HSOne's ability to issue effective patches; developing and deploying Dentrix-mimicking components to divert customers and maintain unlawful integration.

106. Vyne's interference was accomplished by improper means—conduct that is deceptive, unlawful, and contrary to established trade standards—including violations of the CFAA, DMCA, Utah's Unfair Competition Act, as well as software-license breaches and configuration tampering. Vyne's anti-security practices were also deceptive and contrary to industry standards designed to preserve and protect health data.

107. Vyne's acts caused HSOne to suffer economic harm, including lost business opportunities, loss of goodwill, and substantial costs for investigation and remediation.

108. HSOne seeks compensatory and punitive damages, attorney's fees, and injunctive relief prohibiting Vyne from further tortious interference.

### FIFTH CAUSE OF ACTION

**Trespass to Chattels**

**(Utah Common Law)**

109. Vyne incorporates by reference all preceding paragraphs.

110. Vyne intentionally interfered with HSOne's computer systems by misappropriating credentials and private decryption keys, patching binaries, running altered code, and modifying production configurations (including eTrans/DataServices parameters).

111.    Vyne's acts impaired HSOne's systems by blocking authentication and interrupting security eligibility checks. Vyne's acts impaired HSOne's computer system's values and use, including interference with patch deployment and system resources.

112.    As a result of the trespass, HSOne has been harmed, having had to expend resources in investigating and restoring its affected systems. Customer experience and goodwill have also been eroded.

113.    Vyne's conduct has damaged HSOne in an amount to be proven and merits damages and injunctive relief.

<u>SIXTH CAUSE OF ACTION</u>

**Unjust Enrichment**

**(Utah Common Law)**

114.    HSOne incorporates by reference all preceding paragraphs.

115.    By evading HSOne's security controls and altering configurations, Vyne unlawfully obtained benefits—data access, mass exfiltration, and code injection capabilities which were not authorized.  This has enriched Vyne in an amount to be proven, but at least $1 million, on information and belief, because Vyne is bypassing HSOne's API for these purposes.

116.    Vyne knows it is receiving these ill-gotten benefits from its backdoor methods, which are unauthorized.

117.    Vyne's continued possession of the benefits it has received by hacking HSOne is unjust.

118.    HSOne seeks restitution and disgorgement measured by Vyne's gains as well as HSOne's losses.

<u>SEVENTH CAUSE OF ACTION</u>

**Utah Code Ann. § 13-11a-1 et seq.**

**(Utah Truth in Advertising; Deceptive Trade Practices Act)**

119.    HSOne incorporates by reference the preceding paragraphs.

120.    Vyne's customer-facing statements disparaged HSOne by false or misleading representations of fact and caused confusion about sponsorship/approval and legality of Vyne's malicious data extraction and injection, violating Utah Code Ann § 13-11a-3.

121.    Vyne made false or misleading statements of fact to HSOne's customers with respect to HSOne's security measures and Vyne's own methods, while concealing Vyne's backdoor access, patching, and configuration tampering.  Vyne's statements confused customers about sponsorship and approval.

122.    Vyne disseminated its statements through mass email campaigns, public interviews, and direct communications with HSOne's current and prospective customers.  Vyne did so to mislead the market about HSOne's platform security and business conduct.

123.    Vyne's false or misleading statements include statements made by Mr. Stephen Roberts during his June 26, 2025 interview, available on YouTube, as well as Vyne's statements made to its customers on or around August 11, 2025, as described in this Complaint.

124.    Vyne's conduct cost HSOne both goodwill and business in an amount to be proven at trial, while also forcing it to incur expenses in responding to and remediating the harm.

125.    HSOne seeks injunctive relief, damages, and attorneys' fees under § 13-11a-4.


**EIGHTH CAUSE OF ACTION**

**Violations of 15 U.S.C. § 1125(a)(1)(B) (Lanham Act)**

126.    HSOne incorporates by reference the preceding paragraphs.

127.    Vyne disseminated and published statements to mutual customers (HSOne's and Vyne's), as well as to the market at large (e.g., through CEO interview) about HSOne and Vyne's services.  Vyne made these statements in interstate commerce and in this District.

128.    Vyne disseminated its statements through mass email campaigns, public interviews, and direct communications with HSOne's current and prospective customers.  Vyne did so to mislead the market about HSOne's platform security and business conduct.

129.    Vyne spread falsehoods about HSOne and intentionally made false statements and omissions about Vyne's conduct to HSOne customers, claiming Vyne was not engaging in hacking or violations of the law, and that HSOne's security measures and requirements instead were pretextual.  Vyne omitted its hacking conduct, which includes DLL file patching, decryption, service mimicry to gain unauthorized access, and configuration tampering, and other acts.

130.    These statements and omissions were made in commerce and targeted the same customer population HSOne serves.  Vyne's false and misleading statements and omissions violate the Lanham Act, Section 43(a), 15 U.S.C. § 1125(a).

131.    Vyne's false advertising statements actually deceived, or have a tendency to deceive, HSOne customers.  Vyne's false statements and omissions influenced customer decisions, created confusion about HSOne's platform, caused loss of customer goodwill, and diverted business from HSOne.  Vyne's statements were not only misleading but were made with the intent to erode trust in HSOne's platform and to promote Vyne's unauthorized and insecure integration methods.

132.    HSOne suffered competitive and reputational harm and diverted resources to mitigate and correct the record, for which there is no adequate remedy at law.  HSOne seeks damages, disgorgement, attorney's fees, and injunctive relief pursuant to 15 U.S.C. §§ 1116 and 15 U.S.C. § 1117.  HSOne will prove the full extent of monetary damages it has suffered by reason of Vyne's acts through this action.

133.    On information and belief, Vyne's actions are willful and done with the intention of causing confusion, mistake, or deception.  This is accordingly an exceptional case entitling HSOne to recover the costs of this action, including its reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117.

## **NINTH CAUSE OF ACTION**

### **Business libel / Common-law defamation**

134.    HSOne incorporates by reference all preceding paragraphs.

135.     Vyne published false statements about HSOne's conduct and security protocols to HSOne's current and prospective customers, including by omitting the details of Vyne's hacking conduct.

136.     Vyne's statements were made with actual malice and reckless disregard for the truth.  Vyne knows its statements are false, yet continues to disseminate them to HSOne's customers, prospective customers, industry observers, and the general public.

137.     Vyne's conduct of continuing to escalate its hacks while making statements aimed to misrepresent the situation shows that Vyne's statements are not only negligent, but are made with malice through knowledge of falsehood or in reckless disregard to their truth or falsity.

138.     Vyne's false statements were designed to damage HSOne's reputation, interfere with customer relationships, and divert business opportunities causing HSOne pecuniary loss. These statements have caused HSOne reputational harm and forced it to divert resources to correct misinformation.

139.     Vyne's statements were false, and HSOne suffered special damages, including lost business and reputational harm.  HSOne seeks damages and injunctive relief.

## TENTH CAUSE OF ACTION

### Violations of 18 U.S.C. § 2511

### Electronic Communication Privacy Act (ECPA)

140.     HSOne incorporates by reference all preceding paragraphs by reference.

141.     Vyne's conduct constitutes a violation of ECPA, because it intercepted electronic communications intended for HSOne's services by injecting its own domain into the transmission of Dentrix's eClaims/eTrans configuration using invalid, unauthorized eTrans IDs, among other things.  Vyne's interception of contents of electronic communications were contemporaneous.

142.     On information and belief, Vyne intentionally altered software and network configurations designed to capture electronic communications.

143.    The contents of the intercepted communications include claim eligibility transactions, statements, and payment records.

144.    HSOne did not consent to Vyne's interception and redirection of electronic traffic.

145.    Vyne's conduct has and continues to cause HSOne damages and merits statutory damages, actual damages, and equitable relief under the ECPA.

### ELEVENTH CAUSE OF ACTION

### Utah Code Ann. §§ 77-23a-4 and 77-23a-11

### (Utah Interception of Communications Act)

146.    HSOne incorporates by reference all preceding paragraphs by reference.

147.    For the same reasons pleaded under the ECPA, Vyne's rerouting and capture of electronic communications (i.e., redirection of electronic traffic) constitutes an interception under Utah law.

148.    The contents of the intercepted communications include claim eligibility transactions, statements, and payment records.

149.    Vyne intentionally or knowingly intercepted or procured another to intercept or endeavor to intercept  any electronic communications, in violation of the Utah Interception of Communications Act.

150.    Vyne did so without HSOne's consent and outside any statutory exception.

151.    HSOne seeks all civil remedies provided by Utah law (§ 77-23a-11), including damages, punitive damages, attorneys' fees, and injunctive relief.

### PRAYER FOR RELIEF

Plaintiff prays for the following relief:

A.    Damages in an amount to be proven at trial;

B.    Restitution and disgorgement of all money, profits, compensation, or property that Vyne acquired by any wrongful or unlawful means alleged herein and the imposition of a constructive trust on all such money, profits, compensation, and/or property;

C.     Exemplary and punitive damages, in an amount to be determined at trial, as appropriate to punish Vyne and deter such conduct in the future;

D.     Equitable or injunctive relief as permitted by law, including:

        (1) that Vyne cease to engage in non-approved workarounds of HSOne's platforms, and

        (2) that Vyne cease to circumvent, or aid or assist anyone in circumventing, Henry Schein One's security patches;

        (3) that Vyne not subvert HSOne's security patches and implementations;

        (4) that Vyne cease making false and misleading statements that cause HSOne's customers to implement Vyne's malicious hacks;

        (5) that Vyne cooperate with HSOne in implementing its security updates and fixing Vyne's malicious hacks; and

        (6) that Vyne cooperate and not unduly burden customers with respect to HSOne's efforts to help customers to transfer to approved channels.

E.     Pre- and post-judgment interest, at the maximum legal rate;

F.     Attorneys' fees, as appropriate and authorized; and

G.     Such other and further relief as the Court deems just and proper.

## <u>JURY DEMAND</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby asserts its right to a trial by jury on all counts so triable.

**RESPECTFULLY SUBMITTED.**

DATED: October 3, 2025                    GREENBERG TRAURIG, LLP


                                        By /s/ *Michael Burshteyn*
                                            Michael Burshteyn

                                            Michael Burshteyn (*pro have vice pending*)
                                            Marcelo Barros (*pro hac vice pending)*
                                            GREENBERG TRAURIG, LLP
                                            101 Second Street, Suite 2200
                                            San Francisco, California 94105-3668
                                            Telephone: 415.655.1300
                                            Facsimile: 415.707.2010
                                            Michael.Burshteyn@gtlaw.com
                                            Marcelo.Barros@gtlaw.com

                                            Garrett Messerly
                                            GREENBERG TRAURIG, LLP
                                            222 South Main Street, Suite 1730
                                            Salt Lake City, Utah 84101
                                            Telephone: 801.478.6900
                                            Facsimile: 801.994.9041
                                            Garrett.Messerly@gtlaw.com

                                            Sydney Parks (*pro hac vice pending*)
                                            GREENBERG TRAURIG, LLP
                                            One Vanderbilt Avenue
                                            New York, New York 10017
                                            Telephone: 212.801.9200
                                            Facsimile: 212.801.6400
                                            Sydney.Parks@gtlaw.com

                                            *Attorneys for Plaintiff, Henry Schein One, LLC*

# EXHIBIT 1

        
# Vyne vs Schein: Security or Corporate Greed

## Schein vs Vyne: The Fight Over Backdoor Hacks Into Your Data

 **Bob "Dee" Dokhanchi** ✓
Founder and CEO at Dentistry in General LLC, Independent
Journalist and Media Publisher, Society of Professional...



August 23, 2025

### Schein vs Vyne: The Fight Over Backdoor Hacks Into Your Data

Editorial Opinion

By Bob Dee

8/23/2025

-------------------------------------------------------

TLDR: Security has to come before convenience or saving a few dollars. Too many dental tech companies still use backdoor methods instead of approved APIs, leaving practices wide open to breaches, HIPAA fines, and ransomware.

Some of you know my history in technology, and if you don't, feel free to ask me privately. Let's just say I have been deeply involved in technology since I was 14 years old, and I know this space inside and out. Specifically dental technology. It's not just dental politics I have a big mouth on.

But this is important, read the whole thing and support our Resolution 301 for the 2025 ADA's House of Delegates.

https://dentistryingeneral.com/digac

(half-way down the page)

---------------------------------------------------------------------------

For those of you who have read my previous writings you know that security is my number one concern. I would rather give up features and convenience for a software that gives me the most secure solution. That has to be all of our concerns, because the most important thing we have in our businesses is not a great hygienist or that brand new $100,000 laser we bought, **it's our data. Protect it properly, because most dental offices don't.**

Read my writings on Cloud and Imaging technology in Dentistry and the misinformation out there. I also have a **checklist.** Search my Facebook group and other Facebook groups on the subject or message me for it.

I'm not saying this is NOT money-driven, I don't know. It's possible. What I do know is that the revenue from this line of service isn't exactly huge, yet it has created a lot of bad publicity. I'm not privy to any internal motivations, and full disclosure: I have not been on the Ascend advisory board for over a year and they don't pay me for any advertising. I do have many friends at Henry Schein One, regular hard working employees and the C-suite. I do have an advantage of being able to go to them and ask questions.

## This issue though is a no-brainer for me. For me, it's about protecting patient data and nothing else.

Everyone knows how **critical** I have been about Henry Schein and Dentrix Ascend not providing multi-factor authentication (**it's being beta tested now, thankfully**). But I can't be a hypocrite here and not side with them on this.

This is a security risk. **Dentists in general put money and convenience before security, that's a fact.** Most dental offices do not spend enough to safely secure their on-prem servers. That's another fact. My main reason for being an advocate of the cloud technology is the fact that at least your data cannot be taken hostage if you are using a cloud software.

But even if you're using a cloud system, a breach of your local network is still a HIPAA violation and you are obligated to report and pay fines. **Your data might not be taken ransom because the cloud company is protecting it, but your patient data was still exposed. At the end of the day, you are responsible for your systems, your choice of IT, and your choice of software.**

I'm a fan of the open source initiative, **but if you're using the word "open" in your software it shouldn't mean it's open to all hackers.** Linux is open source but also very secure. If you use software that leaves ports wide open, or you hire one of the hundreds of IT companies that set things up wrong due to incompetence or economics, they will not be held accountable. **You as the owner will.**

Don't get me wrong, you can use software that is open securely, if, and ONLY if, **you're spending enough money on IT to protect the data.** Two of the most popular dental software companies out there that are always mentioned by dentists as "the best", are the most commonly found databases on the dark web.

I used Renaissance (bought by Vyne in 2020) back in the early 2000s with Easy Dental (I called it Dentrix Lite). Renaissance Electronic Services was created in 2002 by **Delta Dental entities in Indiana, Michigan, and Ohio to handle electronic claims.** It grew into a major clearinghouse before being acquired by Vyne.

Vyne rolled it into their product line and offered it for claims, clearinghouse, and attachments, but through a method that bypasses Dentrix APIs. That method worked back in the day, but now it is a major vulnerability waiting to be exploited.

## This is not 2005 anymore. Hackers are targeting small businesses like ours and I know multiple offices that have paid six figures in ransom and penalties.

Henry Schein, as the largest software vendor in Dentistry, is also under the microscope after the rise in breaches. I have been critical of them for years for putting customer-requested features ahead of security.

**In the past few years they've changed course and are working hard on security. The HS1 CTO and chief of security are making sure all bases are covered. I actually trust them that they will take care of security, slowly but surely.** The problem is the size of company and things moving slowly. But I digress.

Please note that the supply/equipment company-side hack last year was unrelated to **Henry Schein One, which runs their technology and software division,** and for all practical purposes operates differently. Still, the biggest player in dental software will remain under the magnifying glass.

There's something else that bothers me, and that's my free market and capitalist views. People complain about Henry Schein charging these companies for what they've built and the use of it. I'm not going to sit here and defend the prices of one company or another. Maybe they're more expensive, maybe in the long run they're saving these vendors money. But in a capitalistic world I'm not going to tell Henry Schein they can't charge companies to connect to their software.

Think about it this way: **if another dentist set up shop down the street and wanted to use your CBCT or your new laser for their own patients without paying you, you would have a problem with that.** You invested in it, you maintain it, you insure it, and it is part of your value. The same logic applies here. I'm not saying this is their reasoning. I'm saying we need to be fair.

## There are companies out there that refuse to do what is ethically correct in my opinion even though legally they may be allowed to do so.

What worries me here is not the business rationale, it's that the door is being left wide open. Multiple vendors already offer the same services through official integrations, **using APIs approved by the software company that holds the data. That's not politics, that's basic cybersecurity.**

If a company doesn't want to go through the normal route, they'll build backdoor hacks. I will not endorse that. **Court rulings confirm that patient data belongs to the provider, not the vendor, but once we put our patient records into someone else's infrastructure we rely on them to keep it secure.** We can't shrug and allow any backdoor connection to slide through unchecked.

If the setup requires leaving ports open, I don't care how secure or compliant someone claims it is, that same opening can be used by others. A virtual printer or sync agent might do its job through that channel, but if the door is open for unauthorized access, other unauthorized access is also to be expected. If the door is open, it is open for everyone.

Open Dental is a perfect example. Before version 18.4 they shipped MySQL with the root user and a blank password, plus weak MD5 hashes and exposed credentials. That is a hacker's dream. MySQL ports like 3306 are constantly scanned by attackers. You can see it here:

https://nvd.nist.gov/vuln/detail/CVE-2018-15719

and here:

https://www.tenable.com/security/research/tra-2018-44

Even Open Dental's own documentation warns against exposing MySQL to the internet:

https://www.opendental.com/manual/securitymysql.html

And it's not just one vendor. A misconfigured MongoDB recently exposed over 8 million dental patient and appointment records. You can read about it here:

https://www.hipaajournal.com/database-8-million-patient-records-exposed-online/

There are also countless ransomware attacks on offices in Washington, Texas, Indiana, and almost every state that compromised names, Social

Security numbers, images, and billing data. You can find these by a simple Google or AI search.

**Times have changed. Vulnerabilities are everywhere. What was once a convenient method is now a major liability. A secure vendor relationship means they work with your data holder, use official APIs, enforce audit logs, encryption, and hardened endpoints. That's basic hygiene, not optional.**

And it's not just this one method being scrutinized. Companies like Sikka and NexHealth have also used database connectors and sync agents that cybersecurity experts have warned about.

**With AI now able to parse databases and infer structures without APIs, the risk is even bigger if these shadow integrations continue.** The choice is yours if you want to utilize software that is wide open and allows these types of connections.

## Security is not a luxury and it is not a choice. It is the foundation of everything we do.

You can decide to cut corners, you can decide to go with convenience over compliance, but then you better be ready to explain that decision when something goes wrong. Your patients, your team, and the regulators will all want answers, and "I didn't think it would happen to me" is not going to cut it.

----------------------------------------------------------------

Plug for me: If I have helped you or informed you in any way and want to thank me, please consider attending my amazing CE event, DIG-A-PALOOZA, in the Chicago Area November 7-8, 2025. Thank you.

https://dentistryingeneral.com/dig-a-palooza

--------------------------------------------------------------------------

Checklist: What you should ask every vendor before you sign

Will you sign a Business Associate Agreement that covers the desktop agent, the cloud, and all subcontractors?

**Do you use an official, supported API for integration, or do you connect directly to my database?**

What encryption do you use in transit and at rest, and do you have third-party reporting?

Do you keep an audit trail of every access event, and can I see it?

If your connector needs open ports or direct SQL access, how do you secure them?

Do you provide multi factor authentication and role-based access?

How fast will you notify me if you have a breach, and what is your incident response plan?

**Bonus (but equally important) question if they provide imaging (capturing images or modifying images): Do you have FDA clearance and ask to see it. They all must have it if they capture or modify the images. Some sales people lie unfortunately.**

Alan Rencher Allison Norris Abe Abdul DMD MBA Webster Brehm Spencer Bloom Dr Rich Rosato American Dental Association Karin Irani Steven Saxe. DMD Randall Markarian Raymond Cohlmia Elizabeth A.

"Betsy" Shapiro, DDS, JD, CAE Mark Costes DDS Dr. Paul Goodman
Howard Farran Dentistry in General LLC Iffi Wahla Rihan Javid

### Enjoyed this article?

Follow to never miss an update.



Comments

27 · 4 comments

Bob "Dee" Dokhanchi
Founder and CEO at Dentistry in General LLC, Independent Journalist and Media Publisher
Society of Professional Journalists, Association of Health Care Journalists Dentist, Owner, at Fox
Valley Dental Care Aurora.

Like        Comment        Share

Add a comment...        Follow

Most recent ▾

About                    Accessibility        Talent Solutions              Questions?
                                                                            Visit our Help Center.
Professional Community Policies    Careers    Marketing Solutions
                                                                            Manage your account and privacy
Privacy & Terms ▾        Ad Choices           Advertising                   Go to your Settings.

Sales Solutions          Mobile               Small Business                Recommendation transparency
                                                                            Learn more about Recommended Content.
Safety Center

Select Language
English (English)

LinkedIn Corporation © 2025

# EXHIBIT 2



## Vyne Dental
### RE: Recent Henry Schein One Communications and Dentrix Compatibility
Date: August 11, 2025

We want to provide clarity around recent communications you may have received from Henry Schein One (HS One) concerning the compatibility of Vyne Dental's solutions with Dentrix.

## What's Happening

We have heard from shared customers that HS One is communicating, as early as August 26, 2025, a Dentrix update may disable your ability to send claims through Vyne Dental. HS One intends to block any connection made to Dentrix outside of their Dentrix Developer Program.

Vyne Dental currently enables thousands of practices to send claims via a print-based integration method comparable to e-fax transmission or PDF-creation tools. Since March 2025, Vyne Dental has actively engaged with HS One to join the Dentrix Developer Program. However, the program still does not facilitate claims submission, and it prohibits all alternative integration methods upon entering the program (including our existing print-based solution).

## Why It Matters

With the recent acquisition of DentalXChange by the owners of HS One, it appears they may be consolidating claims traffic under their proprietary eServices offering. This raises concerns about reduced provider choice and increased vendor lock-in — a direction we believe undermines:

- Practice autonomy
- Operational resiliency (as seen during the Change Healthcare outage)
- The spirit of the 21st Century Cures Act's Information Blocking Rule

Vyne Dental has long championed open, secure connectivity that puts your practice and your patients first.

## What You Need to Know

1. **You Can Still Submit Claims**

In addition to our existing print-based method, Vyne Dental offers alternative workflows to submit claims while continuing to develop additional ways to work with Dentrix. We'll provide step-by-step instructions for continued service within Vyne Trellis (or the web experience for our Remote Lite users) based on what HS One enacts.

2. **We Are Committed to Security**

Vyne Dental is a trusted partner of industry-leading organizations like Patterson (Eaglesoft) and Open Dental. We are committed to interoperable connections that support uninterrupted care



and revenue acceleration. Our Vyne Dental clearinghouse is SOC II Type 2 certified and HITrust-CSF® v.11.3.0 (i1) certified. We deliver quality, security, and performance with a focus on adherence to complex regulatory compliance standards, like HIPAA.

For more information on our compliance and security standards, visit https://trust.vynecorp.com.

## What You Can Do

- **Continue Submitting Claims**: We have built solutions and are continuing to add additional options to ensure uninterrupted claim processing. We will notify you if you need to make any changes.
- **Update Your Vyne Tools:** Make sure all computers submitting claims have the most recent version of the PMS Dental Plugin or Remote Lite installed.
- **Stay Informed**: Look out for added guidance within Vyne Trellis (and the web experience for Remote Lite) that outlines:
  - Up-to-date impacts on existing claim submission methods
  - How to use alternative claim submission methods
  - How to contact our support team if needed

## We're With You

We understand that over 60% of your revenue depends on clean, timely claims processing.  We appreciate your partnership and the trust you've placed in Vyne Dental. We are committed to improving the overall health and well-being of your practice so you can focus on improving the overall health and well-being of your patients.


**Sincerely,**


**James Grover**
President, Vyne Dental



**Vyne Dental**
**RE: Henry Schein One, Dentrix Supportability**

It was brought to our attention that Henry Schein One is allegedly informing dental practices, dental service organizations and other providers of healthcare that Henry Schein One will be releasing updates to Dentrix that will intentionally cause their practice management system to no longer be compatible with Vyne's revenue management solutions.

We would like to provide clarity to what these statements mean from our point of view:

- The Change Healthcare breach in February 2024 highlighted the importance of having more than one way to get your insurance claims paid. At Vyne, our position is that no provider should have to deal with the risks and costs associated with a lack of choice in routing claims. To that regard, Vyne has always provided tools to give providers choice.

- Henry Schein One has allegedly stated they are taking actions to actively block **your ability** to use Vyne products, couching it in a general statement of "security, performance and reliability" concerns. However, Vyne is a SOC II, HiTrust-certified HIPAA Clearinghouse with a strong focus on quality, security, and performance.

- According to our records, approximately 20% of Henry Schein One's Dentrix customers use Vyne Trellis for revenue cycle management. You are not alone and we remain committed to innovating RCM solutions that provide the best value with a best-in-class experience.

- **You have a collective voice & we encourage you to engage with your local Henry Schein representative or call their customer support line at 1-800-472-4346 to express your concerns regarding tactics that could materially disrupt your practice.**

Vyne Dental fully supports interoperability across healthcare systems to improve data portability which ultimately drives provider choice and increased transparency into data exchange. We value you, our clients, and your need to protect the privacy and security of the data you share with us. Your trust in our operations is paramount to our mission.

For more information regarding our security measures, please visit our webpage at https://trust.vynecorp.com.

We are grateful to serve your dental practice and excited to continue bringing innovative solutions to your revenue cycle journey.

James Grover
President
Vyne Dental

# EXHIBIT 3



**Customer Data Access Request**
**Pursuant to Customer Authorization**

August 21, 2025

VIA EMAIL AND CERTIFIED MAIL

ATTN: Katherine Wich Sugden, General Counsel, VP
Henry Schein One, LLC
1220 South 630 East, Suite 100
American Fork, UT 84003
kwichsugden@henryscheinone.com

**Re: Customer Access Request to Customer Data within Dentrix**

Each customer listed in the attached schedule has requested that we send this letter on their behalf and has provided us with written agency and authorization to make such requests on their behalf.

Accordingly, Vyne Dental requests, on behalf of each customer listed in the schedule, that access to all Data held within Henry Schein One LLC's dental practice management system(s) be made available to Vyne Dental so they can continue using Vyne Dental's services to support their healthcare operations. "Data" includes, without limitation:

- Patient records, treatment data, and clinical notes
- Billing and insurance records
- Appointment and scheduling information
- Any other data necessary for lawful interoperability and healthcare operations

Vyne Dental is a Business Associate of each requesting mutual customer and is permitted access to the Data through express written authorization from the requesting customer and through its direct Business Associate Agreements with each requesting customer.

Please provide this access without delay, as any failure to do so will directly impair the customer's ability to rely on Vyne Dental's services in support of their essential healthcare operations, potentially disrupting patient care and practice efficiency.

Sincerely,

*Kelly Owen*
—46F72B77904743D...
Kelly Owen, General Counsel
kelly.owen@vynedental.com
828.545.2440

(866) 712-9584

6510 Telecom Dr #300
Indianapolis IN 46278

**vynedental.com**