GREENBERG TRAURIG, LLP
Michael Burshteyn (*pro hac vice*)
Marcelo Barros (*pro hac vice pending*)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com

Garrett W. Messerly (Utah SBN 15678)
222 South Main Street, Suite 1730
Salt Lake City, Utah 84101
Telephone: 801.478.6900
Garrett.Messerly@gtlaw.com

Sydney Parks (*pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017
Telephone: 212.801.9200
Sydney.Parks@gtlaw.com

*Attorneys for Plaintiff, Henry Schein One, LLC*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| HENRY SCHEIN ONE, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL ELECTRONIC ATTACHMENT, INC. d/b/a VYNE DENTAL, a Delaware corporation,<br><br>Defendant. | **HENRY SCHEIN ONE'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br><br>**Case No.** 2:25-cv-00883-JCB<br><br>Magistrate Judge Jared C. Bennett |

Plaintiff Henry Schein One, LLC ("HSOne") seeks a narrow Temporary Restraining Order and Preliminary Injunction under Rule 65 of the Federal Rules of Civil Procedure against Defendant National Electronic Attachment, Inc. d/b/a/ Vyne Dental ("Vyne"). Immediate relief is necessary to enjoin Vyne from hacking HSOne's software systems deployed at thousands of its customers and blocking HSOne from deploying security upgrades to its own software. Vyne's conduct violates the Computer Fraud and Abuse Act (CFAA), the Digital Millennium Copyright Act (DMCA), the Electronic Communications Privacy Act (ECPA), the Utah Interception of Communications Act (U.C.A. §§ 77-23a-4 and 77-23a-11), Utah's Unfair Competition statute, and is unlawful under multiple common-law doctrines. HSOne's motion is based upon this memorandum of law, the Declaration of HSOne's Chief Information Security Officer, Mr. Kenton McDaniel ("McDaniel Decl."), additional materials attached, and any arguments and evidence presented at a hearing on this motion.

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................... 3

    A.    HSOne is a Leading Dental Software Provider. .................................................. 3

    B.    Vyne is a Billing Solution Intent on Bypassing HSOne's API. ............................ 4

    C.    Urgent Injunctive Relief is Warranted due to Vyne's Escalating Hacks in Recent Weeks and Days that Block HSOne from Issuing Security Patches and Updates. ........................................................................................................... 5

    D.    Vyne is Obfuscating its Conduct Through a Public Campaign of False Statements. ............................................................................................................ 8

    E.    Vyne Raced to Pre-Emptively File in Maryland While Hsone was Negotiating a Commercial Agreement in Good Faith, Even Though Utah is the Dispute's Proper Venue. .................................................................................. 9

LEGAL ARGUMENT .......................................................................................................... 11

I.     HSOne is Substantially Likely to Succeed on The Merits of Its CFAA, DMCA, ECPA, Trespass to Chattels, Utah Unfair Competition, and Utah Interception of Communications Claims. ....................................................................................................... 12

    A.    HSOne is Substantially Likely to Succeed on the Merits of its CFAA Claim. ................................................................................................................... 12

    B.    HSOne is Substantially Likely to Succeed on the Merits of its DMCA Claim. ................................................................................................................... 15

    C.    HSOne is Substantially Likely to Succeed on the Merits of its Trespass to Chattels Claim. ................................................................................................... 16

    D.    HSOne is Substantially Likely to Succeed on the Merits of its Unfair Competition Claims. ........................................................................................... 17

    E.    HSOne is Substantially Likely to Succeed on the Merits of its Wiretapping Claim. ................................................................................................................... 18

II.    Without a TRO, HSOne Will Continue to Suffer Irreparable Harm From Vyne's Hacking Attacks. ................................................................................................................... 20

III.   The Balance of the Equities Favors Granting a TRO and PI. ......................................... 21

IV.   Hacking, Technical Circumvention, and Wiretapping Dental Patient Records is not in the Public's Interest. ..................................................................................................... 21

V.    HSOne requests tailored relief to return the situation to before there was conflict about Vyne's hacking. .......................................................................................................... 23

CONCLUSION ......................................................................................................................... 24

# TABLE OF AUTHORITIES

**CASES**

*ACI Payments, Inc. v. Conservice, LLC*,
    No. 121CV00084, 2022 WL 622214 (D. Utah Mar. 3, 2022) ............................................ 14

*AssociationVoice, Inc. v. AtHomeNet, Inc., Civil Action*,
    2011 No. 10-cv-00109-CMA-MEH (D. Colo. 2011) ........................................................ 21

*Bill.com, LLC v. Cox*,
    2023 No. 2:23-CV-26-HCN; 2023 WL 356344 (2023) ..................................................... 11

*ClearOne Commc'ns, Inc. v. Chiang*,
    608 F. Supp. 2d 1270 (D. Utah 2009) .............................................................................. 21

*CompuServe Inc. v. Cyber Promotions, Inc.*,
    962 F. Supp. 1015 (S.D. Ohio 1997) ................................................................................ 16

*Deutsch v. Hum. Res. Mgmt., Inc.*,
    5305, 2020 WL 1877671 (S.D.N.Y. Apr. 15, 2020) .......................................................... 15

*DISH Network L.L.C. v. Rios*,
    2015 No. 2:14-cv-2549-WBS-KJN (E.D. Cal. 2015) ....................................................... 22

*Dish Network L.L.C. v. Torres*,
    No. 6:20-cv-878-O .................................................................................................... 19, 22

*Disney Enters. v. VidAngel, Inc.*,
    869 F.3d 848 (9th Cir. 2017) ........................................................................................... 22

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*,
    356 F.3d 1256 (10th Cir. 2004) ....................................................................................... 20

*eBay, Inc. v. Bidder's Edge, Inc.*,
    100 F. Supp. 2d 1058 (N.D. Cal. 2000) ........................................................................... 16

*Facebook, Inc. v. Power Ventures, Inc.*,
    844 F.3d 1058 (9th Cir. 2016) ......................................................................................... 14

*Fla. Atl. Univ. Bd. of Trs. v. Parsont*,
    465 F. Supp. 3d 1279 (S.D. Fla. 2020) ............................................................................ 21

*Google LLC v. Starovikov, Civil Action*,
　　2021 No. 1:21-cv-10260-DLC (S.D.N.Y. 2021) ............................................... 22

*In re Capital One Financial Corp. Affiliate-Marketing Litigation*,
　　No. 1:25-cv-00023 ................................................................................................ 13

*In re: Maxim Integrated Prods., Inc.*,
　　2013 WL 12141373 (W.D. Pa. Mar. 19, 2013) ......................................... 15, 19

*Keybank Na'l Ass'n v. Williams*,
　　2022 U.S. App. LEXIS 3701 (2022).................................................................. 20

*Kirch v. Embarq Mgmt. Co.*,
　　702 F.3d 1245 (10th Cir. 2012) ........................................................................ 19

*LVRC Holdings LLC v. Brekka*,
　　581 F.3d 1127 (9th Cir. 2009) .......................................................................... 13

*Nassi v. Hatsis*,
　　525 P.3d 117 (Utah Ct. App. 2023) ................................................................. 16

*Podium Corp. Inc. v. Chekkit Geolocation Servs. Inc.*,
　　2020 No. 2:20-CV-352-DB; 2020 WL 6940737 (2020) .................................. 14

*Real Prop. Mgmt. SPV LLC v. Truitt*,
　　2024 No. 2:24-CV-00184-DAK; 2024 WL 3567866 (2024) ............................ 11

*Register.com, Inc. v. Verio, Inc.*,
　　356 F.3d 393 (2d Cir. 2004)......................................................................... 15, 17

*RoDa Drilling Co. v. Siegal*,
　　552 F.3d 1203 (10th Cir. 2009) ........................................................................ 11

*Speed of Light Ops, LLC v. Elliot*,
No. 222CV00246DAKDBP, 2023 WL 2815875, (D. Utah Mar. 21, 2023), report and
　　recommendation adopted, No. 2:22CV246-DAK-DBP, 2023 WL 2814604 (D. Utah
　　Apr. 6, 2023) .........................................................................................................9

*Stackla, Inc. v. Facebook Inc.*,
　　2019 No. 19-CV-05849-PJH; 2019 WL 4738288 (2019) ................................ 22

*Swig Holdings, LLC v. Sodalicious, Inc.*,
　　2017 No. 2:15-cv-00307 (D. Utah 2017).......................................................... 18

*Theofel v. Farey-Jones*,
   359 F.3d 1066 (9th Cir. 2004) ........................................................................ 14

*Thrifty–Tel, Inc. v. Bezenek*,
   46 Cal. App. 4th 1559 (1996) .......................................................................... 16

*TLS Grp., S.A. v. NuCloud Glob., Inc.*,
   2016 No. 2:15-cv-00533-TC; 2016 WL 1562910 (2016).................................. 15

*Total Quality Sys., Inc. v. Universal Synaptics Corp.*,
   2024 No. 1:22-cv-00167-RJS-DAO (D. Utah 2024) ........................................ 17

*UHS of Provo Canyon, Inc. v. Bliss*,
   2024 No. 2:24-CV-163-DAK-CMR; 2024 WL 4279243 (2024) ................................ 11, 22

*United States v. Ackerman*,
   831 F.3d 1292 (10th Cir. 2016) ....................................................................... 16

*Van Buren v. United States*,
   593 U.S. 374 (2021)......................................................................................... 12

*Vox Marketing Group v. Prodigy Promos, LLC*,
   556 F. Supp. 3d 1280 (D. Utah 2021).............................................................. 14

*WhatsApp LLC v. NSO Grp. Techs. Ltd.*,
   No. 4:19-cv-07123-PJH .................................................................................. 13

**FEDERAL STATUTES**

Title 18 U.S.C. § 2511(1)(a) ................................................................................. 18

**STATE STATUTES**

Utah Code § 13-5a-102(3) ..................................................................................... 17

Utah Code § 77-23a-3(10) ..................................................................................... 19

Utah Code § 77 ...................................................................................................... 19

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 217..................................................................... 16

**INTRODUCTION**

Vyne, in recent weeks, has engaged in a malicious computer hacking campaign against HSOne's practice management software, Dentrix.  In response to HSOne's patches and security upgrades, Vyne escalated its hacks.  It is now deploying workaround exploits multiple times a week.  The latest workaround that HSOne detected was one Vyne deployed just days before this filing.  Vyne purports to seek to interoperate with HSOne's software, but Vyne refuses to leverage HSOne's Application Programming Interface ("API") used by over 140 other vendors or negotiate a more custom integration as a clearinghouse.  Vyne, apparently, sees hacking as preferable. Vyne's conduct creates irreparable harm every day it is allowed to continue because it prevents HSOne from upgrading and patching its own software.  This interferes with the day-to-day operations of thousands of HSOne dental practice customers across the country.

These circumstances merit the tailored injunctive relief HSOne seeks.  HSOne asks this Court to issue a narrow order requiring Vyne to stop unlawful hacking of HSOne's software and databases in circumvention of HSOne's technical security measures.  Vyne must stop doing things like misappropriating credentials (including decryption keys) to escalate its own privileges in HSOne's software to administrative privileges without authorization.  Vyne must stop impersonating authorized applications through imported unauthorized binaries.  It must stop forcibly injecting data into HSOne's software settings files through exploits of debug functionality. It must stop intercepting and redirecting network traffic to its own servers.  When HSOne issues security patches and upgrades, Vyne must not develop new hacks to circumvent them.  Nor should Vyne interfere with HSOne's collaboration with its customers to deploy its security upgrades across thousands of dental practices nationwide.  Vyne can build any sort of software it wishes, but it is not permitted to access HSOne's protected systems without authorization and must stop doing so.

1

Because all the temporary restraining order and preliminary injunction factors favor HSOne, Rule 65 permits granting a temporary restraining order and preliminary injunction to restrain Vyne from its escalating conduct. First, HSOne is likely to prevail on the merits of its hacking and interception related claims. The United States Supreme Court has held that database hacking like Vyne's is precisely the sort of conduct that violates the CFAA. Bypassing technical barriers, as Vyne does, also constitutes common-law trespass and violates the DMCA. Further, Vyne's interception of network traffic through code exploits is unlawful wiretapping under federal ECPA and Utah state law. The situation creates daily irreparable harm to HSOne because it cannot upgrade and secure its software systems at its customers' premises. Every time HSOne attempts to do so, Vyne deploys a workaround hack.

The balance of equities and public interest weigh in favor of granting HSOne's requested relief as well. Vyne's conduct creates a precedent for any software company that wishes to disregard a company's security measures to simply break into their computer systems without consequence. Without a TRO and PI, there will be no deterrent for any developer to misappropriate passwords and credentials, decrypt encrypted data, exploit source code, intercept communications—all without authorization—and then mass import and export data. All because the company wishes to have unfettered access rather than use the API or integrate like everybody else. If that is permissible, it is not just Vyne that will be hacking HSOne in perpetuity, but countless companies with similar proclivities across all Internet software industries in the United States.

HSOne has tried everything short of litigation to stop Vyne's conduct. HSOne invited Vyne to its API program. It offered custom integrations on fair commercial terms. In response to these de-escalation attempts, Vyne deployed new and more pernicious exploits and circumventions. Consequently, temporary and preliminary injunctive relief is appropriate to enjoin Vyne's hacking and enable HSOne to secure its computer software.

## FACTUAL BACKGROUND[1]

### A.      HSOne is a Leading Dental Software Provider.

HSOne is a Utah-based dental software company.  Its dental software platforms simplify workflows, enhance patient care, and streamline practices for over a hundred thousand dentists. HSOne's mission is to accelerate the future of dental care through its pioneering Dentrix practice management systems.  Because Dentrix is a hub for HSOne's customers' dental practices, many third-party vendors seek to integrate and interoperate with it.  Though it has no obligation to do so, HSOne enables this interoperation through its API Exchange.

HSOne invests significant resources in making its API reliable and secure for the benefit of its integration partners and customers.  It implements robust access controls, encryption, system monitoring, and a variety of other technical measures to safeguard its customers' sensitive business and patient health data.  At least 140 third-party vendors make use of HSOne's API Exchange to offer solutions to HSOne's customers in over 40 categories.  These categories include patient engagement, revenue cycle management, analytics, and imaging, among others.  The API contains over 750 data endpoints enabling developers to build a plethora of applications that work with Dentrix.  HSOne welcomes any vendor to participate in the program, and vendors join voluntarily. All participants in the API Exchange must agree to HSOne's Terms of Use, which is standard and common for any enterprise API solution in the industry.  HSOne reviews the security of its vendors, offers best practices, and maintains a commitment to support the reliability of its API and underlying Dentrix software platform.

HSOne's innovation shines in a highly competitive field.   HSOne's commitment to innovation and supporting dentists over decades has gained it the trust of thousands of dental

---

[1] McDaniel Decl.  (HSOne's Chief Security Officer has personal knowledge of HSOne's business, Vyne's business, Vyne's conduct, and the interactions between the companies relevant to this dispute.  His accompanying declaration attests to the facts in this factual background section and supports HSOne's request for temporary and preliminary injunctive relief.)

practices.  These practices rely on Dentrix to operate their businesses every single day, enabling them to focus on delivering excellent patient care.

**B.      Vyne is a Billing Solution Intent on Bypassing HSOne's API.**

Vyne is a company that provides a point solution for dental practices to manage their billing.  To facilitate its operations, Vyne seeks to integrate with practice management platforms like Dentrix.  What Vyne seeks most of all is to have unfettered access to insurance claims data in Dentrix.  Dentrix does not provide API endpoints for claims, as those are unique data fields whose automated import and export would risk data integrity compromises.  For claims, Dentrix has backend integrations, integrations that it has offered to implement with Vyne.  Vyne, however, decided to hack HSOne's software systems—apparently for no other reason but to make more money, despite the negative effects on HSOne's software systems and customers.  Vyne's haphazard approach creates multiple conflicting sources of truth inside a dental practice's systems, eroding reliability of the data.  HSOne has no duty to automate any workflow for Vyne, particularly not a workflow that would compromise data integrity, security, and reliability.

Customers wanting to use Vyne still have a path forward, which consists of manually submitting information and working with claims clearinghouses to support back-end integration. This approach has been adopted by others.  Rather than accept the secure integration model HSOne offered—or use the API features Vyne can use—Vyne refused HSOne's API terms and sought to exploit HSOne's software for purposes of direct, read-write access at scale to HSOne-managed software on customer systems.  Vyne has devoted its resources to circumventing HSOne's technical measures that block unauthorized access and to exfiltrate HSOne customer data *en masse*.

Vyne does not stop at exfiltration.  It also hacks HSOne's Dentrix software platform and systems so that it can inject and write data back into HSOne's software platform as well.  All the

while, Vyne misleads and spreads false statements to HSOne's customers about its conduct. Vyne takes great care to obfuscate what it is really doing and purports to act with authorization, even though Vyne has not disclosed its hacking methods to its customers; customers do not have authority to authorize any third-party access of HSOne's software system; and HSOne has made clear to Vyne that its conduct is unauthorized and must cease.

HSOne has recently implemented telemetry to track malicious hacking of its software platform and increase Dentrix's security monitoring capabilities. This, along with HSOne's other diligent investigation methods, has uncovered the following array of deliberate circumvention methods, including: (a) credential misappropriation and binary masquerading; (b) administrator privilege escalation; (c) patch tampering; (d) component impersonation; and (e) code injection for mass data export.

Vyne's deep level of hacking reflects, on information and belief, the fact that multiple of Vyne's employees, including its Chief Executive Officer as well as their President and Chief Technology Officer used to work at HSOne (or at Henry Schein Practice Solutions) in Utah. These former senior leaders have significant insider knowledge of HSOne's product and technical systems.

Vyne's methods and conduct reveal a persistent multipronged campaign of intentional access without authorization and circumvention of HSOne's technical security measures. Vyne's pervasive and relentless approach reflects its commitment to hack by any means necessary.

C.    **Urgent Injunctive Relief is Warranted due to Vyne's Escalating Hacks in Recent Weeks and Days that Block HSOne from Issuing Security Patches and Updates.**

Despite HSOne's direct statements telling Vyne to stop hacking and HSOne's technical measures designed to stop Vyne's unlawful conduct, Vyne persists. Indeed, in recent weeks, Vyne

has escalated its conduct and deployed new malicious hacking methods even while the parties have been engaging in commercial discussions.

Earlier this year, HSOne began receiving an unusual volume of customer complaints concerning Dentrix system instability, failed claim submissions, and unexplained disruptions to eligibility and payment workflows. These complaints were at first sporadic but grew in frequency and consistency, causing HSOne to begin to investigate. To better understand the situation, HSOne developed and deployed internal telemetry capabilities to monitor its software systems and endpoints across its customer deployments. This telemetry allowed HSOne to track configuration anomalies, unauthorized traffic redirection, and patterns of failed authentication across its customer base. In recent weeks, the telemetry data proved HSOne's suspicions correct. According to HSOne's monitoring, Vyne has been releasing a rapid succession of software updates—at least a dozen distinct versions—aimed at hacking Dentrix. Many of Vyne's updates appear to have failed, on information and belief, because they did not properly consider HSOne's software parameters. Vyne continued to spam new updates to circumvent HSOne's security measures. Customers who installed these updates often experienced system degradation, failed integrations, and increased support needs.

Through its telemetry and customer logs, HSOne uncovered that Vyne was intercepting Internet traffic from HSOne's customers that was meant to go to HSOne and redirecting those transmissions to a Vyne endpoint. Vyne's scheme involves first reverse-engineering HSOne's configuration files and decrypting them by misappropriating private decryption keys HSOne provides to its customers. Vyne then injects data into the configuration files, including programmatically intercepting Internet traffic and redirecting it to its vtrans.vynetrellis.com servers. As a separate method, on or around September 10, 2025, HSOne discovered that Vyne exploits a debugging function in Dentrix to modify the eTrans file. The result of these exploits is the rerouting of patient claim data to Vyne controlled servers.

Vyne's modifications break the authentication flow for multiple HSOne services that rely on the same DataServices ID with which Vyne interferes, including HSOne's Eligibility Essentials, Quickbill Premium, and Request to Pay services. The result is that HSOne customers experience failed claims, undelivered payment records, and system instability.

Vyne's interference also obstructs HSOne's ability to deploy security patches. HSOne's patching workflow relies on the same authenticated DataServices connections with which Vyne interferes. This means that Vyne's malicious interception and substitution severs HSOne's essential connection to its own platform installed in customer environments.

Even if HSOne were to repair the configuration setting, Vyne's software has functions to restore the malicious proxy-in-the-middle without user interaction, thus reverting HSOne's updates and perpetuating the unauthorized data interception and computer access. In sum, Vyne has embedded itself so deep into HSOne's locally hosted software that it can now override security measures, impersonate HSOne systems, and intercept protected communications on HSOne's Dentrix systems installed at customer premises.

Vyne's conduct is creating significant disruption across HSOne's customer base. It is causing HSOne to have to respond to a plethora of customers experiencing interruptions, failures, and system instability, all because of Vyne's hacks.

Vyne's conduct is egregious for a variety of reasons. First, it undermines the integrity of HSOne's authentication and security architecture. Second, it exposes sensitive patient and financial data and creates a vulnerability for access by unauthorized third parties. Third, it allows Vyne to manipulate or delay the flow of information, potentially corrupting records or interfering with time-sensitive transactions. Fourth, it deprives HSOne of the ability to monitor, audit, or secure the data flow—effectively stripping HSOne of control over its own software system.

Vyne's actions are not merely unauthorized; they are corrosive to the trust, security, and operability of HSOne's software. Vyne's acts undermine the fundamental security architecture of

HSOne's software solutions and inflict significant reputational and business harm to HSOne. HSOne's customers are frustrated because their systems are not working properly and are misled by Vyne to direct that frustration at HSOne.

Worse, Vyne is interfering with HSOne's ability to update its own systems and roll out new security controls. Due to the nature of Vyne's hacks, it can revert some of HSOne's security upgrades and cause them to fail as well. No amount of money can repair the damage this causes HSOne.

In the days preceding this filing, Vyne has continued to roll out new upgrades and implement new and more advanced technical circumventions of HSOne's security controls. For instance, just in the last week, HSOne has uncovered evidence that Vyne has issued new updates which, on information and belief, contain additional exploits. HSOne has also uncovered evidence that Vyne is misappropriating HSOne software credentials and placing them into configuration files without authorization. Unless enjoined by this Court, Vyne will continue to deploy unauthorized workarounds with impunity.

**D.    Vyne is Obfuscating its Conduct Through a Public Campaign of False Statements.**

In parallel with its technical intrusions, Vyne is making false statements to HSOne's customers about its conduct and HSOne's software systems. Vyne has intentionally not disclosed the nature of its hacking while publicly stating that its interactions with HSOne's software are authorized and benign. Vyne's false statements have caused HSOne customers to reach out to HSOne based on their false impression and interfered with HSOne's relationships and contracts with those customers. Vyne's messaging campaign includes mass email blasts, public statements by its CEO, and other communications designed to obscure Vyne's unauthorized misconduct and shift blame to HSOne for working to secure its own software. Vyne's campaign is designed to

mislead the market, shield Vyne's unlawful conduct from scrutiny, and frustrate HSOne's attempts to issue security patches and upgrades.

> **E.    Vyne Raced to Pre-Emptively File in Maryland While Hsone was Negotiating a Commercial Agreement in Good Faith, Even Though Utah is the Dispute's Proper Venue.**

HSOne has done everything it possibly can to avoid escalating this dispute to court.  HSOne invited Vyne into its API program.  HSOne offered to customize its API Terms for Vyne.  HSOne even offered to work with Vyne to accomplish a direct integration workflow to accommodate Vyne, similar to what HSOne has implemented with its current claims clearinghouse offering.

**August and September Demand Letter Correspondence.**  This August, as the picture of Vyne's hacking began to come into focus, HSOne sent Vyne a letter on August 26, 2025 demanding Vyne stop its hacks.  HSOne put Vyne on notice that its conduct violated the Computer Fraud and Abuse Act, among other things.  Vyne responded on September 6, 2025.  In its response, Vyne falsely characterized its conduct and omitted much of the detail that HSOne had begun to uncover through its telemetry.  Vyne claimed it was just "exporting data to a file usable by Vyne Trellis" by "using a printer driver to assist Vyne customers."  Although this too is unauthorized, it is a gross mischaracterization of what Vyne is *actually* doing:  misappropriating credentials, hacking administrative privileges, injecting data into settings files, intercepting network traffic, and blocking security upgrades and patches.

**Vyne and HSOne Negotiate a Mutual Tolling Agreement with Utah Venue.**  Despite Vyne's egregious conduct, HSOne sought to engage in good faith with Vyne to negotiate a commercial agreement.  This would permit Vyne to have the advantage of an integration with HSOne similar to how HSOne integrates with its current clearinghouse offering.  While the parties negotiated, however, Vyne kept hacking.  Even so, HSOne took every possible effort to come to a

commercial arrangement, despite Vyne essentially holding HSOne hostage through its hacking and public smear campaign.

HSOne also proposed the parties sign a tolling agreement while their discussions continued. Vyne initially responded that it did not understand the purpose of such an agreement, because the negotiations would happen quickly. After HSOne explained that the tolling agreement would still be an important sign of good faith, Vyne agreed to pursue it. HSOne and Vyne came to terms on the tolling agreement on September 15, 2025. HSOne executed that day. It is unclear whether Vyne has signed it or not. When HSOne followed up with Vyne about Vyne's signature, Vyne claimed this was somehow a basis to cut off negotiations with HSOne. It is clear now that Vyne was approaching the negotiations to stall for time while it came up with new hacking workarounds while rushing to file its own baseless claims to muddy the dispute.

**Vyne's pre-emptive filing and forum-shopping.** Racing to court, Vyne filed a Complaint in the District of Maryland on September 30, 2025.[2] Vyne then filed a motion for a Temporary Restraining Order and Preliminary Injunction on October 2, 2025. Vyne appears to be forum-shopping. Vyne's only stated basis for venue in Maryland is that it has some affected customers there. But HSOne and Vyne have thousands of overlapping customers outside of Maryland in every other state. Vyne is not based in Maryland. HSOne is based in Utah. And Vyne's CEO and CTO, both of whom submitted declarations in support of Vyne's preliminary injunction motion in Maryland, are in Utah and signed their declarations from Utah. They both used to work for HSOne in Utah. The nexus of the dispute is here.

Vyne's TRO and PI motion will be resolved in due course—HSOne intends to oppose it and file a transfer motion from Maryland to this Court, which is the proper court to resolve this dispute. But Vyne's rationale stretches the imagination. According to Vyne, HSOne's patching and deployment of security upgrades to stop Vyne's hacking somehow amounts to HSOne hacking

---

[2] Case No. 1:25-cv-03246-MJM.

Vyne's software.  While Vyne's allegations are not relevant to HSOne's request for temporary and preliminary injunctive relief, they demonstrate the tenuousness of Vyne's position.

**HSOne's action.**  HSOne filed its Complaint against Vyne in this Court last Friday, October 3, 2025.  HSOne now files this motion because it has no choice but to seek the Court's intervention to stop Vyne's hacking.

## LEGAL ARGUMENT

"Preliminary injunctive relief is proper when the moving party shows: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party [e.g., balance of hardships]; and (4) the injunction; if issued, will not adversely affect the public interest."  *Real Prop. Mgmt. SPV LLC v. Truitt*, No. 2:24-CV-00184-DAK, 2024 WL 3567866, at *2 (D. Utah July 29, 2024) (granting preliminary injunction).  The standard for a temporary restraining order is the "same standard required to obtain a preliminary injunction." *Bill.com, LLC v. Cox*, No. 2:23-CV-26-HCN, 2023 WL 356344, at *2 (D. Utah Jan. 21, 2023) (granting TRO in data misappropriation dispute).

Preliminary injunctive relief that preserves the status quo brings the parties back to the "last peaceable uncontested status existing between the parties before the dispute developed."  *UHS of Provo Canyon, Inc. v. Bliss*, No. 2:24-CV-163-DAK-CMR, 2024 WL 4279243, at *16 (D. Utah Sept. 24, 2024).  Here, that would be before Vyne began hacking HSOne's software to circumvent HSOne's security patches and upgrades.  When a moving party demonstrates that the "exigencies of the case require extraordinary interim relief," Tenth Circuit district courts may also grant mandatory injunctions requiring conduct that changes the status quo as well.  *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1209 (10th Cir. 2009) (affirming grant of mandatory preliminary injunction).

11

The computer hacking, circumvention, and wiretapping laws at issue in this case support temporary and preliminary injunctive relief. DMCA § 1203(b)(1) authorizes temporary and permanent injunctions to prevent or restrain circumvention of effective access controls. Both the Wiretap Act (ECPA) § 2520(b)(1) and the Utah's Interception of Communications Act § 77-23a-11(2) authorize "preliminary and other equitable relief" to stop interception of electronic communications. CFAA, § 1030(g), also authorizes injunctive relief to halt unauthorized access and damage to protected computer systems.

Here, HSOne meets all factors in the preliminary injunction standard.

**I.      HSOne is Substantially Likely to Succeed on The Merits of Its CFAA, DMCA, ECPA, Trespass to Chattels, Utah Unfair Competition, and Utah Interception of Communications Claims.**

HSOne is likely to prevail on its computer hacking, circumvention, and interception statutory and common-law claims.

**A.      HsOne is Substantially Likely to Succeed on the Merits of its CFAA Claim.**

Vyne's conduct violates multiple CFAA provisions, including §§ 1030(a)(2)(C), 1030(a)(4), and 1030(a)(5)(C). To establish a CFAA claim, HSOne must show that Vyne accesses protected computer software systems without authorization or in a way that exceeds authorized access. *See Van Buren v. United States*, 593 U.S. 374, 390 (2021). Subsection (a)(5)(C) requires nothing more than intentional access without authorization and damage. For subsection (a)(2)(C), HSOne must also show that Vyne uses its access to obtain information, causing HSOne damage. Subsection (a)(4) has the additional element of Vyne doing its conduct with the intent to defraud. HSOne will satisfy all these CFAA elements in this case.

First, Vyne accesses HSOne's software on protected computers at HSOne's customers' premises without authorization. HSOne employs technical gates, such as encryption, role-based access control, and other security measures to stop unauthorized access to its database and Dentrix

systems installed on customers' premises.  Vyne breaks through those gates, misappropriates credentials, decrypts encrypted data, escalates administrative privileges, circumvents patching and security upgrades, and injects data as well as mass exports it.  The Supreme Court has made clear that "liability under [the CFAA] stems from a gates-up-or-down inquiry—one either can or cannot access a computer system, and one either can or cannot access certain areas within the system." *Van Buren*, 593 U.S. at 390.  When the gates are down, such as here, unauthorized access constitutes a CFAA violation.  *See, e.g.*, *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1130 (9th Cir. 2009) (CFAA "target[s] hackers who accessed computers to steal information or disrupt or destroy computer functionality[.]").

The Supreme Court has flagged database access without authorization in particular as a clear CFAA violation.  *Van Buren*, 593 U.S. at 378 (CFAA "covers those who obtain information from particular areas in the computer—such as files, folders, or databases—to which their computer access does not extend"); *id.* at 388 ("exceed[ing] authorized access" means "the act of entering a part of the system to which a computer user lacks access privileges").  Here Vyne accesses HSOne's Dentrix software database without authorization to *en masse* read and write data, obtaining sensitive information in the process.

Further, Vyne's conduct of escalating its privileges and man-in-the-middle proxy attack violates the CFAA.  Vyne's extensive unauthorized modifications of the HSOne Dentrix software system, at runtime, constitutes an impermissible "interruption of service."  *See, e.g.*, *In re Capital One Financial Corp. Affiliate-Marketing Litigation*, No. 1:25-cv-00023, slip op. (E.D. Va. June 2, 2025); *WhatsApp LLC v. NSO Grp. Techs. Ltd.*, No. 4:19-cv-07123-PJH, ECF No. 494 (N.D. Cal. Dec. 20, 2024) (deploying "modified version of the Whatsapp application – referred to as the 'Whatsapp Installation Server'" based on reverse engineering constituted CFAA violation).

Vyne claims that HSOne's customers permit access.  But courts have declined to endorse such a theory, as it would encourage hackers to work around the CFAA by asking a customer to

hack the software they purchased or licensed. Vyne must have authorized access from HSOne, not HSOne's customers. *See, e.g.*, *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1068 (9th Cir. 2016) ("The consent that Power had received from Facebook users was not sufficient to grant continuing authorization . . ."). The District of Utah has favorably applied *Power Ventures* in the context of CFAA, noting that although a defendant "argues it has been authorized by specific customers to access [a software system]," doing so after notice to stop "can constitute access without authorization under the CFAA." *ACI Payments, Inc. v. Conserve, LLC*, No. 121CV00084RJSCMR, 2022 WL 622214, at *11 (D. Utah Mar. 3, 2022).[3]

In any event, to the extent Vyne claims HSOne's customers permit access, Vyne exceeds any authorization they purportedly provided. Vyne does not disclose to its customers all of its hacking conduct, as HSOne's investigation has demonstrated. Vyne's public statements—even its statements directly to HSOne—omit the vast majority of Vyne's technical hacking activity. This supports the claim that Vyne's conduct is done with the intent to defraud, and through actual fraud. This also negates any putative authorization, because "access to a computer is 'unauthorized' or 'without authorization' where access is obtained via fraud, misrepresentation, or other deceptive means."[4] *See, e.g.*, *Podium Corp. Inc. v. Chekkit Geolocation Servs. Inc.*, No. 2:20-CV-352-DB, 2020 WL 6940737, at *2 (D. Utah Nov. 25, 2020) (posing as a customer violated the CFAA).

---

[3] Vyne may also argue that the computers at issue are at HSOne and Vyne's shared customers' dentist offices. This does not remove Vyne's conduct from the scope of CFAA, however. *See, e.g.*, *Vox Marketing Group v. Prodigy Promos, LLC*, 556 F. Supp. 3d 1280, 1284–85 (D. Utah 2021) (noting that "protected computer" is "defined broadly" under the CFAA); *Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2004) (reversing dismissal on such grounds and noting that "Individuals other than the computer's owner may be proximately harmed by unauthorized access, particularly if they have rights to data stored on it."). Under *Theofel*, which has been favorably cited by multiple circuits, "any person who suffers damage or loss by reason of a violation" of the CFAA can bring a cause of action. *Id.*

[4] HSOne has been harmed well in excess of $5,000 based on the cost of its investigation and remediation of Vyne's many hacks. Such investigation and remediation costs can satisfy the $5,000 statutory threshold. *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1066 (9th Cir. 2016); *Speed of Light Ops, LLC v. Elliot*, at *4-5, No. 222CV00246DAKDBP, 2023 WL 2815875, at *5 (D. Utah Mar. 21, 2023), report and recommendation adopted, No. 2:22CV246-DAK-DBP,

### B.    HSOne is Substantially Likely to Succeed on the Merits of its DMCA Claim.

If a person "avoided, bypassed, removed, deactivated, or impaired [] technological measures" for the purpose of accessing copyrighted material, that person violated the DMCA § 1201. *TLS Grp., S.A. v. NuCloud Glob., Inc.,* No. 2:15-cv-00533-TC, 2016 WL 1562910 (D. Utah Apr. 18, 2016).

"To state a claim under § 1201(a)(1)(A), a plaintiff must show: (1) that the work was protected under the Copyright Act; (2) that the copyrighted work was protected by a technological measure that effectively controls access; and, (3) that the measure was circumvented in order to obtain access." *In re: Maxim Integrated Products, Inc.,* No. 12-244, 2013 WL 12141373, at *16 (W.D. Pa. Mar. 19, 2013) (citing 17 U.S.C. § 1201(a)(1)(A)) (internal marks omitted). To "circumvent a technological measure" means "to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner."[5] It is the electronic equivalent of breaking into a locked room in order to obtain a copy of a book." *Id.* at *24 (citing to H.R. Rep. No. 105-551, pt. 1, at 17 (1998) (citations omitted)).

Here, HSOne's Dentrix software source code is protected under the Copyright Act. HSOne's authorization and security measures are meant to protect that copyrighted source code. Vyne's conduct, detailed throughout this motion and the Complaint, circumvents multiple HSOne protective measures to access HSOne's copyrighted software. The core of Vyne's exploit scheme is to misappropriate credentials so that it can decrypt configuration files without HSOne's authority. And runtime patching of security flags in DtxHelp.dll runs afoul of the DMCA because the alteration of the copyrighted software library (DtxHelp.dll) is accomplished for purposes of

---

2023 WL 2814604 (D. Utah Apr. 6, 2023); *Deutsch v. Hum. Res. Mgmt., Inc.,* No. 19-CV-5305, 2020 WL 1877671, at *5 (S.D.N.Y. Apr. 15, 2020) (citing *Register.com, Inc. v. Verio, Inc.,* 356 F. 3d 393, 439 (2d Cir. 2004)).
[5] § 1201(a)(3)(A); *see also NuCloud,* 2016 WL 1562910 at *23.

bypassing, removing, deactivating, or impairing HSOne's technological protective measures. Vyne's hack changes the program while it is running so that the program ignores its own security checks. This bypasses and impairs HSOne's security measures.

Where a party reverse engineers software in order to change its functionality, this violates the DMCA's anti-circumvention provisions. The District of Utah ruled so in *NuCloud*, when it found that "TLS entered the room with a key provided by NuCloud and then proceeded to change the locks so that NuCloud could no longer gain access or lock the room." *Id.* at 10. This is precisely what Vyne is doing when it makes it so that HSOne cannot patch or upgrade its software in the face of Vyne's exploits.

**C.    HSOne is Substantially Likely to Succeed on the Merits of its Trespass to Chattels Claim.**

Traditionally, trespass to chattels is "understood to occur when one intentionally (a) dispossess[es] another of the chattel, or (b) us[es] or intermeddl[es] with a chattel in the possession of another." *Nassi v. Hatsis*, 525 P.3d 117, 122 (Utah Ct. App. 2023) (brackets in original) (quoting the Restatement (Second) of Torts § 217 (Am. L. Inst. 1965)).

Multiple courts have applied the trespass to chattels common law claim to computer intrusion. *See, e.g.*, *United States v. Ackerman*, 831 F.3d 1292, 1308 (10th Cir. 2016) (reviewing commonly cited decisions applying trespass to chattels to the Internet context, including *eBay, Inc. v. Bidder's Edge* and *CompuServe v. Cyber Promotions*).[6]

Vyne's hacks of HSOne's Dentrix systems constitute egregious trespass to HSOne's software application and database. Vyne's conduct dispossesses HSOne of access to patch and secure its own software and intermeddles with HSOne's operations of its application, services, and

---

[6] *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F.Supp.2d 1058, 1063, 1069–70 (N.D. Cal. 2000); *CompuServe Inc. v. Cyber Promotions, Inc.*, 962 F.Supp. 1015, 1019, 1027 (S.D. Ohio 1997); *Thrifty–Tel, Inc. v. Bezenek*, 46 Cal.App.4th 1559, 1565–67 (1996)).

database.  This supports a conclusion at the preliminary injunction stage that HSOne is likely to succeed on this cause of action.  *See id.*; *see also Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004) (affirming preliminary injunction based on a trespass claim against "automated" software "robot" programs that risked compromise to the plaintiff's computer systems).

### D.    HSOne is Substantially Likely to Succeed on the Merits of its Unfair Competition Claims.

The Utah Unfair Competition Act (UUCA) creates a private right of action, allowing for the recovery of actual damages, costs, attorney fees, and punitive damages.  Under the UUCA, a plaintiff must show (i) an intentional business act or practice by defendant, that is (ii) unlawful, unfair, or fraudulent; (iii) leading to material diminution in the value of intellectual property; and that (iv) falls under one of four enumerated categories, including "malicious cyber activity."  *Total Quality Sys., Inc. v. Universal Synaptics Corp.*, No. 1:22-cv-00167-RJS-DAO, at *6 (D. Utah May 23, 2024) (citing Utah Code Ann. Section § 13-5a-102(4)(a)).[7]

Here, Vyne's conduct is intentional and unlawful.  It also impairs the value of HSOne's intellectual property.  Due to Vyne's hacks and exploits, HSOne's computer software does not function as effectively, its copyright protections are circumvented, and its source code is being

---

[7] Under the UUCA, "malicious cyber activity" is defined as "(a) the unlawful use of computing resources to intimidate or coerce others; (b) accessing a computer without authorization or exceeding authorized access; (c) willfully communicating, delivering, or causing the transmission of a program, information, code, or command without authorization or exceeding authorized access; and (d) intentionally or recklessly: (i) intending to defraud or materially cause damage or disruption to any computing resources or to the owner of any computing resources; or (ii) intends to materially cause damage or disruption to any computing resources indirectly through another party's computing resources."  *Id.* at 6-7 (citing Utah Code § 13-5a-102(3)).

exploited. This lessens the value of HSOne's intellectual property tied to its Dentrix software installed on customer premises.[8]

Vyne's acts fall under UUCA "malicious cyber activity" for similar reasons that Vyne's conduct violates the CFAA. It continues to engage in a persistent, escalating campaign of unauthorized access to HSOne's software systems, including misappropriating credentials, decrypting configuration files, injecting data, impersonating HSOne components, and intercepting of web traffic. Vyne's intentional conduct materially disrupts HSOne's ability to deploy security patches, maintain authentication workflows, and ensure data integrity, thus causing system instability, customer complaints, disruption of services, and reputational harm. This satisfies UUCA's § 13-5a-102(3) subsection (d)(i) (damage to owner of computing resources and intent to defraud). Vyne also targeted HSOne's software and systems installed on customer premises, meaning the attacks occurred also indirectly through third-party computing environments, as contemplated by § 13-5a-102(3)) subsection (d)(ii).

All of this conduct together, and each of Vyne's circumventing acts, independently constitutes unfair competition in Utah.

### E.    HSOne is Substantially Likely to Succeed on the Merits of its Wiretapping Claim.

Vyne's man-in-the-middle network traffic re-routing constitutes unlawful interception under ECPA and Utah law. Any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any . . . electronic communication" is liable for ECPA violations. 18 U.S.C. § 2511(1)(a). "Intercept" means the acquisition of the

---

[8] Defendant's false claims about HSOne's software also confuses customers and interferes with HSOne's efforts to help customers upgrade and patch their systems. This constitutes sufficient harm for purposes of IP diminution under the statute. *See, e.g.*, *Swig Holdings, LLC v. Sodalicious, Inc.*, No. 2:15-cv-00307 (D. Utah Sept. 8, 2017) (false terminology confused customers and was sufficient to maintain an unfair competition claim).

contents of an electronic communication by use of an electronic, mechanical, or other device. 18 U.S.C. § 2510(4). "[T]he person or entity . . . which engaged in [the ECPA] violation is the person or entity that intercepted, disclosed, or intentionally used the communication[.]" *Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246 (10th Cir. 2012) (quotations omitted).[9]

Here, Vyne's re-routing amounts to an unlawful interception of electronic communications. When Vyne hacks the eTrans module, it introduces a proxy that sits in the middle of the network traffic without consent. By changing the destination to a Vyne-controlled server— vynetrellis.com—Vyne is intentionally diverting data to Vyne's servers that would otherwise go to HSOne's application. This kind of "man-in-the-middle approach" through which a defendant "sen[ds] and receive[s] electronic communications to and from" a plaintiff's systems "to access and obtain information" violates ECPA. *See In re: Maxim Integrated Prods., Inc.*, No. 12-244, 2013 WL 12141373, at *14 (W.D. Pa. Mar. 19, 2013).

Using "decryption software to descramble" sensitive information "without authorization"—something else Vyne does—also violates ECPA to the extent it intercepts network traffic. *Id.* at 15; *see also Dish Network L.L.C. v. Torres*, No. 6:20-cv-878-Orl-41LRH, 2020 LX 90706, at *13 (M.D. Fla. Nov. 30, 2020) (decrypting satellite network traffic violated ECPA).

Because Vyne intercepts sensitive network traffic from HSOne's applications without HSOne's consent, HSOne is likely to prevail on its federal and state wiretapping claims.

---

[9] Vyne violates the Utah Interception of Communications Act for the same reasons it violates the ECPA. In the Utah statute, "Intercept" is defined as a "means [to] acquisition [] the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." Utah Code 77-23a-3(10). The statute further states that "[a] person commits a violation of this subsection who: (i) intentionally or knowingly intercepts, endeavors to intercept, . . . any wire, electronic, or oral communication." Section 77-23a-4(b)(i).

## II.     Without a TRO, HSOne Will Continue to Suffer Irreparable Harm From Vyne's Hacking Attacks.

Vyne's escalating hacks irreparably harm HSOne.  The Tenth Circuit has found that irreparable harm "factors" include "the difficulty in calculating damages, the loss of a unique product, and existence of intangible harms such as loss of goodwill or competitive market position."  *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1264 (10th Cir. 2004).

Here, all these factors are in play.  Due to Vyne's pernicious hacks, HSOne is unable to issue patches or security upgrades to its systems.  This is because Vyne's hacks enable it to override and block those upgrades.  Vyne's exploits, because they are hastily thrown together and shoddily coded, use a brute force approach to spam HSOne's software systems with processes and data injection to try to take over its applications.  In addition to blocking patches, this also compromises the performance and stability of HSOne's on premises software application and database.  Apart from the technical and security issues Vyne's conduct causes, it also damages HSOne's reputation and goodwill in the market.  This is especially so in light of Vyne's ongoing campaign to obfuscate the true nature of its hacking and constitutes irreparable injury for purposes of injunctive relief. *See id.*; *see also Keybank Na'l Ass'n v. Williams*, 2022 U.S. App. LEXIS 3701, No. 20-1384 at *12 (10th Cir. Feb. 10, 2022) (noting that Tenth Circuit precedent recognizes loss of "goodwill" as something that can "give rise to irreparable injury").

Further, HSOne's telemetry shows that Vyne's hacking and intrusions are increasing in scope and speed.  Unless enjoined, HSOne will be engaged in a constant battle of whack-a-mole, where every time HSOne patches one of Vyne's exploits, they will roll out a new one.  Vyne's circumventions interfere with HSOne's ability to administer and manage its software across its thousands of customers.

20

## III.    The Balance of the Equities Favors Granting a TRO and PI.

The balance of the equities favors HSOne.  Vyne's ongoing unlawful conduct inflicts irreparable harm on HSOne, jeopardizing its operations, reputation, and the security of sensitive data.  By contrast, a TRO would merely require Vyne to comply with the law and stop its hacking and interference with HSOne's security upgrades.

Vyne cannot claim a legitimate harm from being ordered to obey the law.  *See ClearOne Commc'ns, Inc. v. Chiang*, 608 F. Supp. 2d 1270, 1281 (D. Utah 2009) (granting preliminary injunction) ("[A]ny harm the Defendant[] suffer[s] from the injunction is the result of their own misconduct[;] [i]n other words, there can be no harm to the Defendant[] by enjoining them from engaging in illegal activities.").  Vyne, like others, "has no legitimate interest in violating the CFAA."  *See, e.g.*, *Fla. Atl. Univ. Bd. of Trs. v. Parsont*, 465 F. Supp. 3d 1279, 1297 (S.D. Fla. 2020) (punctuation omitted) (citing cases).

HSOne, in contrast, faces significant harm to its software systems, reputation, operational integrity, and data security.  Absent a TRO, HSOne will continue to face an inequitable situation where Vyne is able to hack its database and application to gain unfettered access in the riskiest possible way, while damaging HSOne's goodwill in the process based on spreading false statements about Vyne's conduct.

## IV.    Hacking, Technical Circumvention, and Wiretapping Dental Patient Records is not in the Public's Interest.

It is in the public interest to enjoin bad actors from hacking software to overcome technical measures aimed at protecting that software and enforce the CFAA:  "Prohibiting defendants from further accessing the 'site admin' portion [in violation of the CFAA] … would, if anything, tend to serve the public interest."  *AssociationVoice, Inc. v. AtHomeNet, Inc.*, Civil Action No. 10-cv-00109-CMA-MEH,, at *38 (D. Colo. Jan. 6, 2011).  That result accords with the national consensus that "public interest is clearly served by enforcing statutes designed to protect the

public, such as RICO, the CFAA, the ECPA, and the Lanham Act." *Google LLC v. Starovikov*, Civil Action No. 1:21-cv-10260-DLC, at *10 (S.D.N.Y. Dec. 16, 2021); *see also Dish Network L.L.C. v. Torres*, 2020 LX 90706, at *14 ("[P]ublic interest would be served by enforcing the ECPA and protecting the copyrighted programming that the Defendant unlawfully accessed."); *DISH Network L.L.C. v. Rios*, No. 2:14-cv-2549-WBS-KJN,, at *17 (E.D. Cal. Feb. 13, 2015) ("[T]he public interest would undoubtedly be served by the enforcement of a federal law such as the ECPA.").

The public interest also favors enforcement of DMCA anti-circumvention provisions that protect access controls.  In the DMCA preliminary injunction context, the Ninth Circuit affirmed a preliminary injunction because "the public has a compelling interest in protecting copyright owners' marketable rights to their work." *Disney Enters. v. VidAngel, Inc.*, 869 F.3d 848, 867 (9th Cir. 2017).  The same rationale applies here: Vyne misappropriates credentials to bypass HSOne's technical measures designed to govern the use of its copyrighted software.

Vyne's conduct, left unchecked, will also erode confidence in the broader healthcare and digital space.  As courts in this district have recognized, protection of patient data is of paramount public interest and concern.  *See UHS of Provo Canyon, Inc.*, 2024 WL 4279243, at *19.  The public's confidence in digital platforms and services hinges on the assurance that personal information is secure.  *See Stackla, Inc. v. Facebook Inc.*, No. 19-CV-05849-PJH, 2019 WL 4738288, at *6 (N.D. Cal. Sept. 27, 2019) ("Facebook's ability to decisively police the integrity of its platforms is without question a pressing public interest. In particular, the public has a strong interest in the integrity of Facebook's platforms, Facebook's policing of those platforms for abuses, and Facebook's protection of its users' privacy.").

If Vyne is allowed to continue its hacks, then all developers who seek to circumvent a company's API will have free rein to implement any hacks they wish, even if that involves

misappropriating credentials, decrypting encrypted data, or wiretapping.  A TRO and PI in this case will deter such egregious conduct.

Because HSOne is likely to prevail on its claims, will be irreparably harmed absent an injunction, is on the right side of the balance of equities, and because an injunction is in the public interest, early injunctive relief in this case is merited and appropriate.  Indeed, it is critical to maintain confidence in the precept that a developer's software is their own and cannot be hacked and exploited just because another developer does not wish to engage commercially.

**V.    HSOne requests tailored relief to return the situation to before there was conflict about Vyne's hacking.**

The relief HSOne seeks through this motion is narrow.  HSOne seeks a TRO to stop Vyne from continuing to carry out its hacking and security circumvention attacks on HSOne's software and systems.  HSOne's requested relief is, at its core, prohibitory (i.e., no security circumvention; no tampering; no interference), and includes only minimal restorative steps (restoration of altered configuration files and certification).  This preserves the last peaceable uncontested status and prevents further hacking.

Plaintiff respectfully requests that the Court issue a Temporary Restraining Order and a Preliminary Injunction, ordering that effective immediately and until further order of the Court, Vyne, its officers, agents, contractors, service providers, servants, employees, affiliates, attorneys, and all persons in active concert or participation with any of them, are:

1. Enjoined from engaging in non-approved workarounds of HSOne's platforms;

2. Enjoined from circumventing, or aiding or assisting anyone in circumventing HSOne's security upgrades and patches;

3. Enjoined from subverting HSOne's security upgrades, patches, and implementations;

4. Ordered to cooperate with HSOne in implementing its security updates and fixing Vyne's malicious hacks;

5. Ordered to cooperate and not unduly burden customers with respect to HSOne's efforts to help customers to transfer to approved channels;

6. Enjoined from tampering, altering, or modifying HSOne's eTrans/Data Services configuration values;

7. Ordered to restore the eTrans/Data services values to their original values, and issue a sworn certificate of compliance within a reasonable window of time (such as 10 days);

8. Enjoined from inserting, altering, or executing code that writes, overwrites, or otherwise affects HSOne's Dentrix databases without authorization;

9. Enjoined from creating any workarounds or methods, such as HTTP/HTTPS local proxies, designed to intercept or re-route data traffic;

10. Enjoined from exploiting, altering, or modifying Dentrix debug configuration files;

11. Ordered to preserve logs, scripts, telemetry, binaries, certificates/keys, and related documents and communications;

12. This injunction will remain in effect until further order of the Court, with the matter set for a preliminary injunction hearing on a date set by the Court;

13. Plaintiff requests such further equitable relief as is necessary to effectuate and enforce the foregoing restraints, including impoundment and destruction of circumvention tools upon final relief.

## CONCLUSION

Because Vyne will stop at nothing to hack HSOne's software systems, including taking over administrative control and blocking security patches and upgrades, HSOne respectfully requests that the Court grant temporary and preliminary injunctive relief. This narrow relief is critical to restore the last peaceable status quo and permit HSOne to secure its customers' Dentrix software deployments.

Dated, this October 7, 2025,


GREENBERG TRAURIG LLP


By */s/ Michael Burshteyn*
    Michael Burshteyn


GREENBERG TRAURIG, LLP
Michael Burshteyn (*pro hac vice*)
Marcelo Barros (*pro hac vice pending*)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Garrett Messerly
222 South Main Street, Suite 1730
Salt Lake City, Utah 84101
Telephone: 801.478.6900
Garrett.Messerly@gtlaw.com

Sydney Parks (*pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017
Telephone: 212.801.9200
Sydney.Parks@gtlaw.com

*Attorneys for Plaintiff, Henry Schein One, LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 8th day of October, 2025 a copy of  Henry Schein One's Motion For Temporary Restraining Order and Preliminary Injunction, the Memorandum of Law in support thereof, and proposed order were emailed to the following persons, who stated that they represented Defendant in connection with the current dispute between the parties:

> Michael Shuster
> mshuster@hsgllp.com
> Vincent Levy
> vlevy@hsgllp.com
> Holwell Shuster & Goldberg LLP

These materials were also sent via Overnight Mail on October 8, 2025, to the following:

> National Electronic Attachment, Inc. D/B/A Vyne Dental
> 100 Ashford Center North, Suite 300
> Dunwoody, GA  30338

> National Electronic Attachment, Inc. D/B/A Vyne Dental
> ℅ Corporation Service Company
> 2 Sun Court, Suite 400
> Peachtree Corners, GA  30092

> National Electronic Attachment, Inc. D/B/A Vyne Dental
> ℅ Corporation Service Company
> 251 Little Falls Drive
> Wilmington, DE  19808

*/s/ Suzanne Williams*