Amy F. Sorenson (8947)
Bret R. Evans (15131)
**SNELL & WILMER L.L.P.**
Salt Lake City, Utah 84101
Telephone: 801.257.1900
Email: asorenson@swlaw.com
          brevans@swlaw.com

Michael Shuster*
Vincent Levy*
Daniel Fahrenthold*
Torrell Mills*
HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Ave., 14th Floor
New York, NY 10017
Telephone: 646.837.5151
mshuster@hsgllp.com
vlevy@hsgllp.com
dfahrenthold@hsgllp.com
tmills@hsgllp.com

*pending pro hac vice*

*Attorneys for National Electronic Attachment, Inc. d/b/a Vyne Dental*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| **HENRY SCHEIN ONE, LLC**, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>**NATIONAL ELECTRONIC ATTACHMENT INC. d/b/a VYNE DENTAL**, a Delaware corporation,<br><br>Defendant. | Case No. 2:25-cv-00883-AMA-JCB<br><br>**VYNE DENTAL'S RESPONSE IN OPPOSITION TO HS ONE'S MOTION FOR RECONSIDERATION OF THE ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>District Judge Anne Marie McIff Allen<br><br>Magistrate Judge Jared C. Bennett |

Pursuant to DUCivR 7-1(a)(4)(D)(ii), Defendant National Electronic Attachment Inc. d/b/a Vyne Dental ("Vyne"), through counsel, hereby files its *Response in Opposition to HS One's Motion for Reconsideration of the Order Denying Motion for Temporary Restraining Order and Preliminary Injunction*.  Utah Dkt. 20.[1]

---

[1] Citations to "Utah Dkt. __" refer to docket entries in this Action, No. 25-cv-0883.  Citations to "Maryland Dkt. __" refer to docket entries in the Maryland suit, No. 25-cv-03246 (D. Md. Sept. 30, 2025).

## TABLE OF CONTENTS

INTRODUCTION .......................................................................................................... 1

BACKGROUND .......................................................................................................... 1

    I.   Factual Background ............................................................................ 1

    II.  Procedural History ............................................................................ 3

ARGUMENT ............................................................................................................... 4

    I.   HS One Fails To Satisfy the Standard For Reconsideration.................. 4

    II.  The Court Correctly Applied The First-to-File Rule. ........................ 5

        1.  The Chronology Is Undisputed: Vyne Filed First........................... 6

        2.  The Parties Are Identical, and the Claims Overlapping. ................. 6

        3.  The Equitable Factors Strongly Favor Denying HS One's Motion for Reconsideration. ....................................................................... 8

CONCLUSION............................................................................................................ 10

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Deere & Co.*,

852 F.2d 1244 (10th Cir. 1988) ................................................................ 4

*Consumer Financial Protection Bureau v. Acima Holdings LLC*,

2024 WL 4931839 (D. Utah Dec. 2, 2024) ................................................ 9

*Ellicott Mach. Corp. v. Mod. Welding Co.*,

502 F.2d 178 (4th Cir. 1974) ................................................................... 5

*Greer v. Moon*,

2025 WL 2803344 (D. Utah Sept. 30, 2025) ............................................. 5

*Hospah Coal Co. v. Chaco Energy Co.*,

673 F.2d 1161 (10th Cir. 1982) ................................................................ 5

*King v. IC Grp., Inc.*,

743 F. Supp. 3d 1341 (D. Utah 2024) ................................................... 4, 5

*Michael W. v. United Behavioral Health*,

420 F. Supp. 3d 1207 (D. Utah 2019) .......................................... 7, 8, 9, 10

*New Beckley Mining Corp. v. Int'l Union, UMWA*,

946 F.2d 1072 (4th Cir. 1991) ................................................................. 5

*Servants of the Paraclete v. Does*,

204 F.3d 1005 (10th Cir. 2000) ................................................................ 4

*The SCO Grp., Inc. v. Novell, Inc.*,

2007 WL 2746953 (D. Utah Sept. 14, 2007) ............................................. 5

*U.S. ex rel. Brown Minneapolis Tank Co. v. Kinley Constr. Co.*,

816 F. Supp. 2d 1139 (D.N.M. 2011) ........................................................ 7

*Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*,

910 F.3d 1118 (10th Cir. 2018) ............................................................ 5, 6

*Z-Line Designs, Inc. v. Bell'O Int'l, LLC*,

218 F.R.D. 663 (N.D. Cal. 2003) ............................................................. 9

## INTRODUCTION

Henry Schein One, LLC ("HS One") requests reconsideration of the denial of its preliminary-injunction motion on the basis that the Court's denial supposedly misapplied the first-filed doctrine. That is not a proper basis for reconsideration, and the Court got it exactly right.

The record is clear: Vyne filed an action first against HS One in Maryland federal court on September 30, 2025, and sought emergency relief two days later. The next day, October 3, HS One filed this duplicative action, and then, another five days later, it filed its own motion.

Unable to identify any new fact or law that the Court overlooked, HS One tries to reframe the record. It insists that the cases are different, as though Vyne's effort to preserve its own customers' access to health records (the subject of this suit) were distinct from HS One's effort to cut that access off (the principal subject of the Maryland suit). HS One also argues that only this Court can halt what it calls "daily hacking," even though the same systems, conduct, and witnesses are already before the District of Maryland, and there has been no impediment to HS One seeking relief in that Court in the three weeks since Vyne started that lawsuit.

## BACKGROUND

### I.    Factual Background

For over 20 years, Vyne has provided clearinghouse and revenue-cycle-management services through its program Trellis to help dental practices verify insurance eligibility, submit claims, and receive payment. Ex. 1 ¶ 6;[2] Ex. 6, Decl. of Stephen Roberts ("Roberts Decl."), ¶¶ 3, 4. Vyne's customers include thousands of dental offices nationwide. Ex. 6, Roberts Decl. ¶¶ 3, 4.

These dental practices often store patient records on Dentrix, a dental-practice management

---

[2] Citations to "Ex. __" refer to Exhibits attached to the Declaration of Vincent Levy, filed contemporaneously with this Opposition.

program owned by HS One. *Id.* ¶ 7. Vyne's Trellis system integrates with Dentrix to obtain this data through a simple printer-driver tool that allows a dental office to "print" a document electronically and transmit that patient data to Vyne—much like printing to a PDF in Microsoft Word. Ex. 7, Decl. of James Nix ("Nix Decl."), ¶ 5.

To eliminate Vyne as a competitor, HS One informed dental practices that Dentrix updates were needed to address unspecified "security issues." Ex. 6, Roberts Decl. ¶¶ 15–16. HS One then released a beta version of Dentrix including a function called "EventBridge," which secretly scanned customers' computers, identified Vyne's printer driver, branded it "hostile," and then barred customers from printing patient data to Trellis. Ex. 7, Nix Decl. ¶¶ 12–13. HS One then solicited customers to join its software based on its misconduct, sending an email solicitation titled "Vyne Disconnects Imaging & Claims" that made false claims against Vyne and urged practices to "upgrade from Vyne to Dentrix . . . for just $99/month." Ex. 6, Roberts Decl. ¶¶ 18–21. HS One said "security issues" prevented Dentrix integration with Trellis and warned that Vyne users would be blocked from all eClaim services. *Id.* ¶¶ 26–29. Some practices saw this as "grimy sales tactic[s]." *Id.* ¶ 31.

In late May, HS One ostensibly invited Vyne to join its "Dentrix Developer Program," sending a "Henry Schein Developer Program Agreement," but this proposed agreement would ban Vyne's continued use of its printer driver without any replacement. *Id.* ¶¶ 35–36. Vyne objected and noted that the proposal violated the Cures Act's prohibition on information blocking. *Id.* ¶ 37. Vyne offered to pay the fees and join HS One's DDP, if it could keep using the driver in the interim. *Id.* ¶ 39.

On July 28, HS One's General Counsel emailed new demands: $2 million in "Prior Use Fees," while accusing Vyne of "hacking" that "compromise[d] the security and integrity" of

Dentrix.  *Id.* ¶¶ 43–44.  On August 26, HS One's outside counsel sent a cease-and-desist letter threatening litigation for "hacking" despite Vyne's longstanding printer-driver integration.  *Id.* ¶¶ 46–47.

HS One later requested that Vyne enter into a tolling agreement; Vyne agreed as a gesture of good faith.  Ex. 8, at 5–6.  The draft agreement stated that "[n]othing in this Tolling Agreement shall limit either Party's right or ability to seek a preliminary injunction against the other Party's conduct, or to assert any claims against the other Party at any time."  Ex. 9, at 2.  HS One said it would send a signed version on September 15, but Vyne heard nothing for nearly ten days.  *Id.* at 3–4.

Meanwhile, on September 23, HS One deployed new software that fully disabled Vyne-signed Windows services on customer computers.  Ex. 7, Nix Decl. ¶ 16.  That prevented Trellis from restarting, even after reboot, and shut down Trellis across hundreds of customers.  *Id.* Customers remained offline, and dozens canceled their contracts.  Ex. 6, Roberts Decl. ¶¶ 54–56.

On September 26, HS One sent Vyne a signature page for the tolling agreement and asked for Vyne's signature.  Ex. 8, at 3.  In the wake of HS One's new update, Vyne made clear that the parties needed to conclude commercial discussions and reach a binding letter of intent.  *Id.*  But HS One's CEO responded by disavowing any interest in coming to such an amicable resolution.  *Id.*  That, and HS One's deployment of its computer virus, left Vyne with no choice but to commence litigation.  *Id.*

## II.    Procedural History

On September 30, Vyne sued HS One in Maryland.  Ex. 2.  Vyne moved for a TRO and preliminary injunction on October 2, 2025.  Ex. 5.  HS One filed this parallel action on October 3. Utah Dkt. 1.  On October 8, HS One moved for a TRO here.  Utah Dkt. 14.  This Court denied that

motion on October 8 with leave to refile if the Maryland court declines jurisdiction, and HS One filed this instant motion. Utah Dkt. 20.

The District of Maryland ordered HS One to respond to Vyne's TRO and preliminary injunction by October 15, and Vyne to file any reply by October 21. *See* Maryland Dkt. 34. HS One moved in Maryland to transfer the case to Utah on October 14 and then filed its opposition to the pending TRO and PI on October 15. Maryland Dkts. 35, 38. Oral argument on Vyne's motion for preliminary relief is set for October 23, 2025. Maryland Dkt. 34.

## ARGUMENT

### I.    HS One Fails To Satisfy the Standard For Reconsideration.

The Court may deny HS One's motion for failure to satisfy any of the limited grounds that warrant reconsideration. District courts have discretion to review interlocutory orders "prior to entry of final judgment." *Anderson v. Deere & Co.*, 852 F.2d 1244, 1246 (10th Cir. 1988). And the "'basic assessment . . . under Rule 54(b) remains the same as under Rules 59(e) and 60(b).'" *King v. IC Grp., Inc.*, 743 F. Supp. 3d 1341, 1344 (D. Utah 2024). But reconsideration is appropriate only where there is "(1) an intervening change in the controlling law, (2) new evidence that was previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

HS One's motion does not attempt to show that there has been a change in law or that there is new evidence unavailable at the time the Court ruled. Instead, HS One believes reconsideration is needed to correct a clear error or to prevent manifest injustice, without cause. But the Court correctly applied the first-to-file rule. And the Court's ruling causes HS One no prejudice, given that HS One is free to seek relief in Maryland or transfer of the Maryland case to Utah, which it has done already. Meanwhile, it is settled that reconsideration is inappropriate "when the motion

merely advances new arguments or supporting facts which were available at the time of the original motion." *The SCO Grp., Inc. v. Novell, Inc.*, 2007 WL 2746953, at *1 (D. Utah Sept. 14, 2007). Reconsideration "must be made upon grounds other than a mere disagreement with the court's decision and must do more than rehash a party's former arguments that were rejected." *Greer v. Moon*, 2025 WL 2803344, at *2 (D. Utah Sept. 30, 2025).

As the standard for reconsideration remains unmet, the Court should deny relief.

## II.    The Court Correctly Applied The First-to-File Rule.

The Court should deny relief even if a reconsideration motion were the proper vehicle for re-argument—and it is not—because the Court correctly applied the first-to-file rule. The Tenth Circuit has long held that "when two courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case." *See Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir. 1982) (citation omitted). That principle is known as the "first-to-file" rule. *Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1124 (10th Cir. 2018); *see also Ellicott Mach. Corp. v. Mod. Welding Co.*, 502 F.2d 178, 180 n.2 (4th Cir. 1974).

Under that rule, "[s]uits are parallel if [] the same parties litigate substantially the same issues in different forums." *New Beckley Mining Corp. v. Int'l Union, UMWA*, 946 F.2d 1072, 1073 (4th Cir. 1991). In the Tenth Circuit, in deciding whether to defer to the first-filed case, courts consider "(1) the chronology of events, (2) the similarity of the parties involved, (3) the similarity of the issues or claims at stake," and (4) "equitable factors," like "inequitable conduct, bad faith, anticipatory suits, and forum shopping." *Wakaya*, 910 F.3d at 1124 (citations omitted).

HS One disputes the Court's application of the first-filed rule, but there was no error.

5

### 1. *The Chronology Is Undisputed: Vyne Filed First.*

Vyne's case was clearly first. The Tenth Circuit confirms that, for purposes of determining priority under the first-filed rule, courts should look to the date of filing of each complaint. *Wakaya*, 910 F.3d at 1124 & n.3. In other words, the inquiry requires nothing more than comparing the dates on which the competing actions were filed. *See id.*

Here, Vyne filed first in Maryland on September 30 and moved for a TRO and preliminary injunction on October 2. Exs. 1, 5. HS One filed its complaint in this Court later—on October 3—and then moved for injunctive relief on October 8. *See* Utah Dkts. 1, 14. While HS One quibbles with the time elapsed between each filed complaint, the Tenth Circuit has explained that "[the] first-to-file rule applies regardless of how many days separate the filings." *Wakaya*, 910 F.3d at 1125 & n.5. Accordingly, the Court correctly made that determination.

### 2. *The Parties Are Identical, and the Claims Overlapping.*

Next, there is also no question that the two cases are the same for purposes of the first-filed rule. The Tenth Circuit instructs that district courts should consider "whether the two cases bear substantial overlap in (1) the parties and (2) the issues or claims." *Wakaya*, 910 F.3d at 1124. That is plainly true here. The parties are the same. And the issues and claims are substantially the same.

Indeed, each complaint centers on the same set of facts: Vyne's allegations that HS One unlawfully interfered with customer-facing software and data transmissions routed from HS One's Dentrix platform to dental practices through Vyne's Trellis system, and HS One's competing allegations that it was addressing security issues and that Vyne's efforts to patch things up were supposedly unlawful. *Compare* Ex. 1 *with* Utah Dkt. 1. HS One's pleadings repackage the same facts under new labels—calling Vyne's access "hacking" or "interception"—but no matter how

framed, both actions hinge on the same facts: HS One's 2025 software updates, the parties' respective communications with customers, and Vyne's efforts to restore service.

Even the causes of action align: every Maryland state-law claim Vyne asserts—tortious interference, unfair competition, false advertising, and deceptive trade practices—has a mirror counterpart in HS One's Utah complaint. Moreover, Vyne <u>also</u> seeks a declaration that there is no merit to the hacking and misrepresentation allegations asserted by HS One in its cease-and-desist letter—presumably the same matters that animate its Utah complaint. Ex. 2, ¶ 120. The Maryland complaint thus embraces not just Vyne's claims for affirmative relief, but also all the claims that HS One has made in this Court. Vyne's Maryland complaint covers the entire controversy.

HS One invokes *U.S. ex rel. Brown Minneapolis Tank Co. v. Kinley Constr. Co.*, 816 F. Supp. 2d 1139, 1143 (D.N.M. 2011), to suggest that this Court ought to exercise jurisdiction even when the parties are the same, because the New Mexico court there denied the motion to dismiss or in the alternative to transfer venue. But HS One omits the critical point: the New Mexico court there declined to dismiss or transfer because the Texas court had <u>already</u> transferred "the Texas Action to the District of New Mexico." *Id.* at 1153. The Court has accounted for this possibility by allowing HS One leave to file if the Maryland court declines to take jurisdiction.

HS One's reliance on *Michael W. v. United Behavioral Health*, 420 F. Supp. 3d 1207 (D. Utah 2019), is also misplaced. There, the court declined to apply the first-to-file rule because the two actions involved "distinct controversies arising seriatim"; one was filed under ERISA and the other under the Parity Act, and the two cases were based on different treatment facilities and factual records. *Id.* at 1228–30. Here, a Maryland ruling would resolve the central dispute in both actions regarding HS One's blocking and Vyne's patching efforts. And again, Vyne filed a declaratory judgment claim covering HS One's claims here.

### 3. The Equitable Factors Strongly Favor Denying HS One's Motion for Reconsideration.

The equitable factors also point toward deference to the District of Maryland. While no formal factors govern the inquiry, courts disregard filing priority only in "special circumstances," such as "vexatious and oppressive suits" or clear forum shopping. *Michael W.*, 420 F. Supp. 3d at 1230. Vyne's filing reflects none of those exceptions, and all considerations point to Maryland.

***Alleged forum shopping.*** HS One challenges Vyne's choice of forum, but the Tenth Circuit recognizes that "a plaintiff is generally free to file a lawsuit in the forum of its choosing so long as the suit meets jurisdictional and venue requirements." *Span-Eng Assocs. v. Weidner*, 771 F.2d 464, 470 (10th Cir. 1985). That tracks here. HS One does not dispute that jurisdiction and venue are proper in Maryland; it only says that Utah would be more convenient. Meanwhile, Vyne alleged direct harm to dental practices nationwide, with its share of affected customers in Utah materially indistinguishable from the share in Maryland. Ex. 2, at ¶¶ 18, 24, 30.

Moreover, Vyne filed its lawsuit not to preempt HS One but to obtain affirmative relief. Vyne sued HS One after it deployed a virus in late September, disabling Vyne's software on the computers of Vyne customers, and after HS One's CEO again declined to reach a commercial agreement. This was no anticipatory suit seeking to preempt an HS One complaint; it was an action seeking relief based on misconduct extremely harmful to Vyne and its customers.

HS One invokes the cease-and-desist letter and tolling agreement to suggest that Vyne filed prematurely, citing cases refusing to apply the first-filed rule where one party lured the other into non-action by feigning interest in settlement. But HS One's effort to shoehorn the facts of this case into those precedents fails, not least because, as noted above, the draft tolling agreement said clearly that "[n]othing in this Tolling Agreement shall limit either Party's right or ability to seek a preliminary injunction against the other Party's conduct." Ex. 9, at 2. No one promised not to file

suit.  And given that signatures were not exchanged, it was appropriate—and not anticipatory—for Vyne to seek relief when HS One deployed its virus, and to choose to do so in a forum of its choosing.  Moreover, if there is forum-shopping here, it is by HS One.  The complaint asserts mirror-image claims, and was filed just three days after Vyne's, only after Vyne sought emergency relief there.  Filing a parallel suit and seeking a counter-TRO to gin up a potential conflict among district courts is textbook gamesmanship.  If HS One really needed injunctive relief, one would think it would have sought it in Maryland three weeks ago, or at least after this Court denied relief.

HS One's cases are not to the contrary.  In *Z-Line Designs, Inc. v. Bell'O Int'l, LLC*, the plaintiff received a cease-and-desist letter, sought deadline extensions to "promote settlement," and then filed suit a day before its adversary promised litigation.  218 F.R.D. 663, 664–65 (N.D. Cal. 2003).  Nothing similar occurred here.  HS One proposed a tolling agreement that expressly preserved both parties' right to bring suit at any time.  It then deployed its virus in the middle of discussions, before making clear that it had no interest in finding a compromise.  Vyne's filing to halt active interference is the antithesis of bad-faith forum racing.

*Consumer Financial Protection Bureau v. Acima Holdings LLC*, 2024 WL 4931839 (D. Utah Dec. 2, 2024), also does not help HS One.  There, settlement talks had fully collapsed, and "it was clear the Bureau was going to bring an enforcement action."  *Id.* at *1–4.  That "classic" anticipatory suit bears no resemblance to Vyne's measured response to a new software deployment shutting down its product.  *Id.* at *3.  Nothing in *Acima Holdings* suggests that a party suffering immediate operational harm must wait passively while its counterparty disables its software.

**Risk of piecemeal litigation**.  The first-filed rule may be relaxed if there is a lesser risk of piecemeal litigation and conflict between the lawsuits.  *Michael W.*, 420 F. Supp. 3d at 1230–33.  The overlap in the two cases here presents a real risk of conflicting rulings that supports a robust

9

application of the first-to-file rule.  Again, the Maryland and Utah actions are mirror images—same parties, same facts, and competing requests for injunctive relief.  Allowing both to proceed would spark a race between courts, and risk two federal judges issuing rulings that direct the parties to act, or refrain, in ways impossible (or at least difficult) to reconcile.  Vyne seeks to restrain HS One from impairing its customers' access to patient data, while HS One labels that same access "hacking."  Not only is the risk of conflict real, but the possibility seems to be precisely what drove HS One to file its suit in this Court days after Vyne sought to bar HS One's virus.

***Availability of a forum***.  The first-to-file rule may not apply if the party resisting its application may be left without a forum.  *Michael W.*, 420 F. Supp. 3d at 1230–33.  HS One insists that deferral here leaves it "without a forum."  That dilemma is self-inflicted and wrong.  It is self inflicted because HS One chose to file a second suit rather than seek relief in Maryland, so HS One cannot now claim unfairness when the first court proceeds.  HS One's claim is also wrong because it has been able for three weeks to file its own claims in Maryland and to seek injunctive relief there.  And that has the added benefit of a single verdict (and interim rulings) regarding the parties' dispute, thus avoiding conflicts and unnecessary waste of judicial and party resources.  As Maryland can provide full relief, HS One's preference for Utah does not transform its mirror-image counterclaims into a separate controversy.

In sum, the equities reinforce this Court's ruling.  The cases substantially overlap, and only deference to the first-filed court avoids forum shopping, duplication, and inconsistent orders.  The Court properly applied the first-filed rule.  The Maryland court will evaluate HS One's transfer motion after it is submitted.  But there is no warrant to have a competing federal suit here.

## CONCLUSION

For the foregoing reasons, this Court should deny HS One's motion for reconsideration.

DATED:          October 22, 2025.

**SNELL & WILMER L.L.P.**                    **H**OLWELL **S**HUSTER **& G**OLDBERG **LLP**


*/s/ Bret R. Evans*                              Michael Shuster
Amy F. Sorenson                              Vincent Levy
Bret R. Evans                                Daniel Fahrenthold
                                             Torrell Mills


*Attorneys for Defendant National Electronic Attachment, Inc., d/b/a Vyne Dental*

11